### HAUPT et al. v. MICHAELIS. *
(No. 232–3414.)

(Commission of Appeals. of Texas, Section B. June 1, 1921.)

**1. Wills ⚌439—Intention of testator must control.**

The intention of testator, if not inconsistent with some established rule of law or with public policy, must control in the construction of a will; and it is the duty of the defendants to ascertain such intention, and to give force and effect to the scheme that the testator had in his mind for the disposition of his estate.

**2. Wills ⚌488—Parol evidence inadmissible where will is free from doubt.**

Where the instrument is free from doubt, and the intention of the testator is expressed with sufficient intelligence and clearness to make the will incapable of more than one construction, there is no need of parol evidence, and such evidence will not be admitted to show that the will did not express the intention of the testator.

**3. Wills ⚌488—Evidence of surrounding circumstances not admissible to contradict expressed intention.**

Evidence of surrounding circumstances is inadmissible to show that testator's intention was different from that signified by him in the use of the words in the will.

**4. Wills ⚌488—Extrinsic evidence admissible where intent of testator ambiguous.**

Where a will is ambiguous to the extent that the intention of the testator cannot be ascertained from the language of the will itself, extrinsic evidence is admissible.

**5. Wills ⚌470—Intent of testator must be arrived at by considering entire will.**

All parts of a will must be construed together, and the intention of the testator must be arrived at by considering the whole, and not from detached, segregated, and isolated words, sentences, or clauses.

**6. Wills ⚌460—Words or sentences may be transposed to show testator's intent.**

In construing a will, words, clauses, or sentences, or even whole paragraphs, may be transposed to any extent with a view to show the intent of the testator.

**7. Wills ⚌441—Law at time of execution may be considered in determining intent.**

The law at the time of the execution of a will may be considered in ascertaining testator's intent.

**8. Evidence ⚌65—Testator presumed to have known that in absence of will his children would inherit equally.**

It is a matter of common knowledge that, in the absence of a will, all testator's children will inherit equally, and testator will be presumed to have known the law in that respect.

**9. Wills ⚌535—Holographic will construed to exclude one of testator's children.**

Testator having six children, including a married daughter, who had a husband and two children, in his lifetime divided his lands into five parts, and made deeds, respectively, to the children other than the daughter, and in his will recited the fact of such division, and provided that L., the daughter's husband, and his two children should receive no part of his lands. The will further recited that the daughter was entirely incompetent, and had to be taken care of all her life. The daughter had lived in the home of testator for five years

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 23, 1921.

preceding testator's death. Her husband never visited her during that time, and she suffered from intense and continuous melancholia. *Held*, that it was the evident intent of testator to exclude the daughter from any interest in the land.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by G. B. Haupt and others against M. G. Michaelis. Judgment for plaintiffs was, on defendant's appeal, reversed in part and affirmed in part (212 S. W. 274), and plaintiffs bring error. Reversed on recommendation of the Commission of Appeals, and judgment of trial court affirmed.

Will G. Barber and T. J. Saunders, both of San Marcos, for plaintiffs in error.

W. W. Searcy, of Brenham, and R. E. Mc-Kie, of San Marcos, for defendant in error.

KITTRELL, J. This action as originally filed in the district court was in the form of trespass to try title, but the concrete question, as the case is presented to us, is, What is the proper construction of the holographic will of W. W. Haupt?

To the end that our opinion may be complete within itself, and that there may be no necessity to refer back to the original case out of which this appeal grew, we will set forth in condensed form the facts:

The will which we are called upon to construe bears no date, but was executed some time in 1905 or 1906, the exact time not being important to be known.

The maker of it died in 1907, but the son, who by common consent took charge of all his (the testator's) papers, seeing the will was not dated or witnessed, thought it had no validity as a will and it was not offered for probate until about seven years after the testator's death.

Its probate was contested, but the judgment admitting it to probate was sustained by the Court of Civil Appeals (212 S. W. 274), and writ of error was refused by the Supreme Court.

A guardian was appointed for one of the daughters of W. W. Haupt, Mrs. Alice Landers, who had become insane, and by order of the court her interest in the land, which is the subject of litigation in this proceeding, was sold to defendant in error. The daughter inherited one-sixth of the community interest of her mother, one-twelfth of the whole, and the purchaser (defendant in error) claimed that she took one-sixth of her father's one-half under his will. Therefore he, by his purchase under the sale by the guardian, got title to one-sixth of the whole. The remaining five heirs contended that their sister Mrs. Landers took no interest in the land under the will of her father.

Plaintiffs in the court below (plaintiffs in error here) obtained judgment in the district court, decreeing that Mrs. Landers took nothing under the will, and that they were adjudged entitled to recover one-twelfth of the land, which judgment was reversed by the Court of Civil Appeals, and defendant in error was adjudged to be entitled to one-sixth of the land instead of one-twelfth.

If, as plaintiffs in error contend, Mrs. Landers was excluded as a devisee by the will of her father then the judgment of the Court of Civil Appeals must be reversed. On the other hand, if she was included as a devisee by the terms of the will, its judgment must be affirmed.

The will of W. W. Haupt, as it appears in the statement of facts, is in terms as follows:

"As I am past my threescore years and ten, it becomes my duty to provide for the future.

"My land is all surrounded by fence which my son Lewis (and every one in the neighborhood knows it boundaries).

"I have already laid off my field in 50 acre lots and all the children have drawn shares and measured off and selected their lots and are satisfied with their selection. These are on the M. M. McCarver League. The balance of my land lies on the west end of the McCarver tract. Some, or in all on the McCarver tract 400 acres.

"That is held as pasture land and each heir should have an undivided interest in said pasture—as 150 acre on the West end of the McCarver league. As I expect the most of my children to build houses on West end of McCarver League, I desire that each one should occupy all the land necessary to accommodate the necessity of the land around the house.

"Their is one exception to this rule. I don't want A. P. Landers to ever have any interest whatever in any part of this land. Nor his two children, Willie & Johnnie. His wife, my daughter Alice, has lived with me five years and she is entirely incompetent to do anything & has to be taken care of all her life.

"My wife, Sarah Ann, as long as she lives must be provided from the products of this place, as far as it is able to do so, with all the necessaries & comforts of this life. I have a few dollars in the Wood National Bank, the Ed. Green First National Bank, both of San Marcos, and the Groos Bank of Kyle, all of which is at her disposal and use. Now to sum up, there is not a child of mine, who would not spend the last dime for their mother's comfort. As for A. P. Landers I ask no favors from him and done want any. As for his two sons Willie & Johnnie, my children can give them money if they choose, but they must be deny any of my land.

"[Signed]    W. W. Haupt."

There are certain facts material to be understood in order to properly interpret the above will, which facts we will state in as condensed form as is consistent with clearness. The testator had six children, two sons and four daughters, all of whom were grown and married.

One of the daughters, Mrs. Alice Landers, had a husband and two grown sons. Their family home was in Hopkins county, but for

five years before the will was made she had been an inmate of the home of her parents in Hays county. She was the victim of intense melancholia, and lived as a recluse in her room. Though she had been raised in the neighborhood, she declined to see any of her former friends, and had no intercourse even with the members of her father's family. Her meals were carried to her room, and when addressed she replied only in monosyllables. She did not perform any of the duties of the household or assist in their performance. Her husband did not visit her during the entire five years, nor did either he or his and her sons contribute in any measure whatever to her support, but she was maintained entirely by her father.

While she was living in that way at her father's house the other five children divided the field which was on the McCarver tract, and consisted of about 250 acres into five equal parts, and it was testified by four of the plaintiffs, children of W. W. Haupt, that the division was made by their father's direction, and that the reason he gave for dividing it into five parts instead of six was that if any of it was given to Mrs. Landers she would get no benefit from it, and it would be the same as giving it to her husband and sons, and he did not want them to have any of it; that she had been in his house for five years, and was unable to attend to any business, and would have to be taken care of the rest of her life.

It is shown by record evidence that the testator ratified and confirmed the division by making a deed, in which his wife joined, to each child for the land he or she had drawn in the division, making five such deeds, none of which was made to Mrs. Landers.

With the title to the 250 acres standing in that condition the will was made. After her father's death Mrs. Landers was, pursuant to medical advice, placed in a sanitarium in San Antonio where persons afflicted with nervous and mental ailments were treated. How long she remained there is not revealed by the record, but about December 27, 1907, her son took her out of the sanitarium and carried her to Sulphur Springs, Hopkins county. It appears that when she was next seen by any of her father's family she was in the asylum for the insane at Terrell, Tex.

The widow of W. W. Haupt died in 1912, intestate, and Mrs. Landers inherited one-sixth of her community interest in the land on the Dunn league, and, in order to prove the title he claimed to one-sixth of the entire 2,830 acres, defendant offered in evidence orders of the county court of Hopkins county, which showed that on July 3, 1912, A. P. Landers was, pursuant to his own application, appointed guardian of his wife's person and estate, and that in a supplemental inventory filed March 5, 1914, he inventoried one-sixth of the 2,830 acres in the Dunn tract as property belonging to his wife's estate, and that the interest was appraised at $6,050.

He showed also that on March 12, 1914, he was empowered to sell the one-sixth interest, and that he made the sale the same day; that the sale was confirmed March 19, 1914, and that for a recited cash consideration of $6,050 he on March 24, 1914, made a deed in his capacity as guardian to M. G. Michaelis to the said one-sixth interest.

We have had the benefit of briefs and arguments of marked ability, but counsel on both sides admit that they have been unable to find any case exactly like the instant case; or, as it is expressed by counsel for plaintiffs in error:

"We have found no case just like this, and of the many cases examined no one can be said to really be a precedent on the facts for the decision of any other."

A large part of the briefs is devoted to discussion of the question when and to what extent is parol evidence admissible for the purpose of construing the meaning of a will, and a very large number of authorities is cited from the reports, not only of this state, but from the courts of other states and of England, and from text-books which are everywhere recognized as reliable authority; but there are certain basic fundamental rules of construction and rules prescribing when, and to what extent, parol evidence is admissible in such cases, which are followed and applied in all jurisdictions, and it is unnecessary to go beyond the limits of our own reports in order to find cases in which those rules have been recognized and applied.

[1] That the intention of the testator, if not inconsistent with some established rule of law, or with public policy, must control, and it is the duty of the courts to ascertain such intention and to give force and effect to the scheme that the testator had in his mind for the disposition of his estate, is a cardinal and fundamental rule of interpretation, and is so familiar that no citation of authority is necessary.

The rule was so laid down in Texas at least as early as the case of Philleo v. Holliday, 24 Tex. 42, and perhaps earlier.

[2] Where the instrument is free from doubt, and the intention of the testator is expressed with sufficient intelligence and clearness to make the will incapable of more than one construction, there is no need of parol evidence, and such evidence will not be admitted to show that the will does not express the intention of the testator. A. & E. Encyc. of Law, vol. 30, p. 675; Cyc. vol. 40, p. 1428.

[3] Where the will is plain and unambiguous, no evidence of surrounding circumstances is admissible, and direct evidence of inten-

tion, as by the testator's declaration, is never admitted for the purpose of showing that his intention was different from that signified by him in the use of the words of the will. Encyc. of Ev. vol. 14, pp. 504, 505, 506; Lenz v. Sens, 27 Tex. Civ. App. 442, 66 S. W. 111.

The rules of law above set forth have been established almost from time immemorial, and are recognized and applied by all courts in cases where the will under consideration was plain and unambiguous; that is, where it was capable of but one construction.

[4] When the will is not of that character, but is ambiguous to the extent that the intention of the testator cannot be ascertained from the language of the will itself, another rule of law equally as well established is applicable, and is necessary to be invoked. As an accurate statement of the consensus of judicial opinion, it is phrased in Cyc. vol. 40, p. 1431, as follows:

"Where the language of the will is uncertain and doubtful, or contains a latent ambiguity, extrinsic evidence may be admitted for the purpose of explaining the will, the situation of the testator, and the facts and circumstances surrounding him at the time of the execution of a will, such as evidence as to the facts that the will was written by the testator himself, and that he was not a professional man, or as to the condition of his family, and the amount and character of his property, or as to his feelings toward, and his relations to, the persons affected by the will, or as to the condition of the beneficiaries. Such evidence, however, is not admissible where the language of the will is plain and unambiguous."

In the statement of the rule of law just quoted the term "latent ambiguity" is used, and it may be helpful to say at this point that it is made evident by examination of the latest text-books, and the decisions of our own courts, that the distinction between "latent" and "patent" ambiguities is now practically ignored and disregarded; and the courts, without regard to the distinction, endeavor to arrive by the most direct way at what the testator meant when he wrote the will. Gardner on Wills, 388–389; Page on Wills, 988; Schouler on Wills, 581; Jarmon on Wills, vol. 1 (6th Ed.) 400–402; Meyers v. Maverick, 28 S. W. 716.

Among the numerous authorities cited in Cyc. in support of the rule of evidence above quoted is the case of Hunt v. White, 24 Tex. 643. That case was decided as early as 1860, and has been consistently followed to this time. In the course of his opinion Chief Justice Wheeler quoted from Phillips on Evidence, and cites Greenleaf to the effect that to allow parol evidence where the will is plain and unambiguous would be "inconsistent with the rule * * * which has been universally established for the construction of wills, namely, that the testator's intention is to be collected from the words used in the will, and words which he has not used cannot be added."

However, it is held in the same case that "it is competent to admit parol evidence * * * to explain a will * * * by showing the situation of the testator in his relation to persons and things around him; or, as it is often expressed, by proof of the surrounding circumstances, in order that his will may be read in the light of the circumstances in which he was placed at the time of making it."

It is also said that while the intent "must be ascertained from the meaning of the words in the instrument and from those words alone," yet, as the testator "may be supposed to have used language with reference to the situation in which he was placed to the state of his family, his property, and other circumstances relating to himself individually and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the facts of the particular case."

The substantial meaning of the authority last cited, and of all others that we have examined, and the idea sought to be conveyed, is tersely and felicitously phrased by the Supreme Court of Kentucky in the following language:

"In other words, as it has often been expressed, it is incompetent by this character of proof to show what the testator intended to say, but did not, but it may be shown what was intended by what he did say." Eichhorn v. Morat, 175 Ky. 80, 193 S. W. 1013.

[5] It is of course elementary that all parts of the instrument must be construed together, and the intention of the testator be arrived at by considering the whole, and not from detached, segregated, and isolated words, sentences, or clauses.

[6] In this connection it is logically in order to set forth yet another rule of construction which has long been applied by the courts of Texas and all other jurisdictions, and which is peculiarly applicable to the instant case.

"There is no more clearly established rule of construction, as applicable to wills, than that words, or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator. Pond v. Bergh, 10 Paige, 140. Words and limitations may be transposed, supplied, or rejected. But it must appear, either from the words of the will, or extrinsic proof, admissible in aid of the words, that the transposition does really bring out the true intent of the testator, and thus render what was before obscure, clear. * * * There is no doubt that a particular construction of words, although somewhat variant from their more natural and obvious import, may be strengthened by reference to extraneous circumstances." 1

Redf. on Wills (4th Ed.) pp. 431–2, quoted in Hawes v. Foote, 64 Tex. 27.

Extraneous facts are always admissible in aid of the construction of wills to the extent of explaining doubts, or removing uncertainties, when with that aid the intent is clear. Currie v. Murphy, 35 Miss. 473.

We have been prompted to deal at length with the question of the admissibility of parol evidence, rather by reason of deference to the earnest contention of the respective counsel, than because we believe a determination of the question was essential to a proper decision.

We are of the opinion that the will is capable of being correctly interpreted without reference to any of the testimony admitted over objection of defendant in court below (defendant in error here) by applying to the will and the undisputed facts the recognized rules of construction above set forth.

It is proper to say in this connection that it is revealed by the statement of facts that, in reply to the objection made to the introduction of the parol testimony as to declarations of the testator, counsel for plaintiffs in the court below stated that he would not insist upon any statement of W. W. Haupt as to what he was going to, or did, put in his will, but contended that any declaration of the testator as to why he wanted any person to take and another not to take, an interest in the land was competent as a circumstance bearing on the construction of the will. The testimony appears to have been admitted, limited to the purpose indicated.

As we have said above, we believe the will can be properly construed without reference to any evidence except that which is undisputed.

The testator refers first in specific terms to his "field" which was in the McCarver tract, and following the order of his will we will deal first with that property. We can pretermit, for the purpose of argument, all the testimony as to the declaration of the testator as to his reasons for so dividing the 250 acres as to exclude Mrs. Landers from any interest therein, since it has already been shown that he made deeds dividing the 250 acres among five of his children, and that Mrs. Landers was not one of the five.

The contention has been pressed that a construction of the will which would exclude Mrs. Landers from any interest in the land would operate gross injustice, but, as has been seen, not only did the testator in the solemn form of a deed to each of five children so divide the 250 acres as to exclude Mrs. Landers, but his wife, the mother of Mrs. Landers, joined in the execution of each and all of those deeds.

Certainly it cannot be contended that the mother would have harbored any intention to do her daughter injustice. As to the 250 acres, those deeds clearly manifest the purpose and intent of the testator concerning Mrs. Landers.

Referring to the division so made he says: "I have already laid off my field in 50-acre lots, and all the children have drawn shares," etc.

It is obvious that that statement is not literally true, because Mrs. Landers was not included in the division, though it was made with solemn formality. To conform that statement to the truth, and express the manifest meaning and purpose of the testator, we must supply between the words "all the children" and the words "have drawn" the words "to whom I intend to give any of my land."

There is abundant authority in law for so supplying words, where they serve to make clear the meaning and intention of the testator. Hawes v. Foote, 64 Tex. 27, and authorities therein cited.

Proceeding to the third paragraph of the will, we find as part of a sentence a clause which reads as follows: "*And each heir should have an undivided interest in said pasture*" (italics ours). As we construe the brief and argument of counsel for defendant in error, he bases his contention in the main on that clause.

Arguing on the basis of the words italicized, he strenuously insists that there is no doubt or ambiguity in the will. If there were no language following these words explanatory of the meaning of the testator, or if these words could properly, and in accordance with recognized and controlling rules of construction, be separated and segregated from what precedes and what follows, the contention would unquestionably be correct.

There are, however, phrases explanatory of the testator's meaning, and we are not at liberty to disregard accepted canons of construction.

It is manifest that the testator meant to make an exception which would apply to one of his children, and we are of the opinion that the words, "their is one exception to this rule," should be transposed so as to immediately follow the clause, "*And each heir should have an undivided interest in said pasture.*"

This is true, because, the purpose to make an exception being obvious, the reason for the exception was meant to follow the declaration that there should be one, and the reason is that he did not want either the husband of his daughter or her sons ever to have any interest whatever in any part of his land.

The statement that he expected "most" (which implies, but not all) of his children to build on the west end of the McCarver Field tract clearly establishes no "rule," since he evidently contemplated that there might, and probably would, be one or more exceptions to, so to speak, his expectation.

When we consider the obvious purpose to prevent the son-in-law and grandsons from ever by any possibility benefiting by his will, the transposition made above is justified, if not imperatively demanded. This view is strengthened, if indeed not conclusively proved correct, by the further language in paragraph 6:

"My daughter Alice [Mrs. Landers], has lived with me for five years and is entirely incompetent to do anything & has to be taken care of all her life."

The statement is abundantly justified by the evidence, showing her husband had neither visited his wife nor contributed in any measure to her support in five years.

It appears to us that the plan and purpose of the testator to limit the division of his land to five children is further shown by the statement that if his children chose they could give the grandsons money, but they must be denied any part of his land.

If all the children, including Mrs. Landers, were to get only an equal share of the land, there could have been no reason for the apprehension that any of them out of his or her one-sixth would give a part to the sons of a sister who was to receive as much as each of the others.

There is no room for doubt that W. W. Haupt's controlling and dominant purpose was to so devise his land that his son-in-law and grandsons could never by any possibility have any interest in it; yet if his daughter had become a beneficiary under the will, and had died the day after her father died, a life estate of one-third would have vested instantly in the husband, and title in fee simple to all her share in her sons.

If she survived, as she did, the husband, as the law then was, would have had the management and control of all the property and been entitled to half the rents and revenues.

If she was meant to be included in the terms of the devise, then the will meant nothing, since its effect would have been in no wise different from the operation of the statute of descent and distribution.

[7] It has been held in high authority that the law of the state at the time of the execution of a will may be considered in ascertaining the intention of the testator. Peet v. Peet, 229 Ill. 341, 82 N. E. 376, 13 L. R. A. (N. S.) 780, 11 Ann. Cas. 492.

[8] The presumption is entitled to be indulged that the testator knew that if he made no will all his children would inherit equally, as that is a matter of common knowledge; and, if the instrument be given the interpretation contended for by defendant in error, to all intents and purposes it amounted to no will, and the manifest plan of the testator becomes no plan, and the purpose which was obviously uppermost in his mind to exclude his son-in-law and grandsons from any possible interest would be thwarted and defeated.

Neither the husband nor the grown sons of Mrs. Landers had contributed to her support in five years, and it is evident that the testator realized that her support would have to be furnished by his wife and children, as the remaining 125 acres of the McCarver tract produced no revenue, and the revenue from the Dunn tract was very small.

Defendant in error lays much stress upon the arrangement made between Mrs. Haupt and her children as to the remaining 125 acres of the McCarver tract, of the benefit of which Mrs. Landers was the recipient to the extent of about an amount equal to that which each of the other five children had received out of the same tract.

We do not attach great importance to that transaction, first, because it is clearly shown that the money was used to meet the expense of keeping Mrs. Landers in a sanitarium; and, second, because we are unable to see how it is in any way helpful in interpreting the will made a year or more before by W. W. Haupt.

We do not deem it necessary to consider the assignments of error relating to giving and refusing charges, as under the facts they do not raise questions of substantive law.

If the court believed the meaning of the will to be doubtful and was unable to determine whether or not Mrs. Landers was excluded from an interest in the land, there is abundant authority in support of its action in submitting the question to the jury as a mixed question of law and fact.

[9] We are of the opinion that, regardless of the parol testimony, the court could and should have construed the will as expressing the intention of the testator to exclude Mrs. Landers from any interest in the land in question; therefore whether there were or were not errors committed in the trial becomes an immaterial question.

We are of the opinion that the judgment of the district court was correct, and that it was erroneously reversed.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.