**Layton WAXLER, Independent executor, Appellant,**

**v.**

**Juanita KLINGEMANN, Independent executrix, Appellee.**

**No. 10251.**

Court of Civil Appeals of Texas.

Austin.

Nov. 3, 1954.

Rehearing Denied Dec. 1, 1954.

John C. Butler, Austin, for appellant.

Owens, Purser & Stevenson, Austin, for appellee.

HUGHES, Justice.

This is a suit to construe the last will and testament of Addie J. Waxler who died January 25, 1952. Decedent was the widow of L. W. Waxler.

The parties are Layton Waxler and Juanita Klingemann, son and daughter of decedent and the only beneficiaries of her will.

The dispute is over the proper construction of paragraph two of the will which reads:

> "I will and devise unto my beloved son, Layton Waxler my Red River Street property in fee simple."

It is the contention of Layton Waxler that this description includes not only a frame residence fronting on Red River Street in the City of Austin but also an adjacent garage apartment which fronts on Ellingson Lane.

Juanita Klingemann disputes this construction as to the garage apartment contending that this property should pass under the residual clause of the will which vested the remainder of the estate in the parties hereto in equal shares.

The trial court agreed with the position of Juanita Klingemann and rendered judgment accordingly.

The will is very short and omitting formal parts, reads:

### "I.

"I will and devise unto my beloved daughter, Juanita Klingerman my Manchaca Road property in fee simple.

### "II.

"I will and devise unto my beloved son, Layton Waxler my Red River Street property in fee simple.

### "III.

"I wish the Thousand Dollars that my daughter, Juanita Klingerman owes me to be cancelled; and also I wish the thousand dollars that is owed me by Rodger E. Plowman be paid to my beloved son, Layton Waxler.

### "IV.

"All the rest, residue and remainder of my property both real and personal shall pass to and vest in fee simple title, share and share alike, equally in and to my beloved daughter Juanita Klingerman and my beloved son, Layton Waxler. This is the way your father wished the property to go.

### "V.

"I hereby name, constitute and appoint as the joint executors of this, My Last Will And Testament, Juanita Klingerman and Layton Waxler, and desire and direct that no bond or other security be required of them in such capacity.

"And Furthermore, it is my wish and direction that there should be had in the Probate (County) Court no action in the administration of my estate other than to file and prove this will and to file an inventory an appraisement, and a list of claims."

Lots 1, 2 and 3 of Speckels and Staehely Addition, particularly described in the record, were at one time owned by the parents of the parties. These lots were each 50' by 155', the 50' being the east-west measurement and the 155' being the north-south length. These lots are bounded on the north by Ellingson Lane, on the south by 44th Street, on the west by Red River Street and on the east by Lot 4 of the Addition. Lot 1 fronts 155' on Red River Street, 50' on Ellingson Lane and 50' on 44th Street. Adjacent and interior Lots 2 and 3 front only their east-west widths of 50' on Ellingson Lane and 44th Street.

In 1945 and 1946, L. W. Waxler, the father of the parties, sold and conveyed to third parties the approximate south half of Lots 1, 2 and 3.

The frame residence which faces Red River Street is located on the unsold portion of Lots 1 and 2. The garage apartment which faces Ellingson Lane is located on the unsold portion of Lot 3.[1]

These improvements were on the property when purchased by L. W. Waxler.

The residence and garage apartment have a common back yard, the occupants of both using the same barbecue pit and table and clothes line and a single sewer line serves both places. There are separate water meters but they are both located on the Red River Street curb. There are also two gas meters but they are at the north side of the residence "just as close as they can be

---

1. This portion of Lot 3 was decreed by the judgment to pass under the residuary clause of the will.

placed." The two light meters "are on the back of the garage apartment."

There are three garages in the garage partment, one for its tenant and two are used by the tenants of the house.

Two realtors appraised the estate land with these conclusions: Manchaca Road property (1) $15,800, (2) $15,000. Residence and garage apartment (1) $16,100, (2) $15,300.

The residence and garage apartment were separately rendered for tax purposes and were separately insured against fire. The valuation for tax purposes in 1942 and 1945 for the garage apartment was $1,700 and the residence $1,600 and the tax valuation for the Manchaca road property in 1945 was $1,000.

There is in the record a great deal of inadmissible evidence some of which was admitted without objection and some of which was not admitted even though an objection to it was expressly withdrawn by the party against whom it was offered.

■ The nature of this evidence was of oral declarations of the testatrix directly expressing her intent as to the disposition of her property by will. This evidence was clearly inadmissible, Schelb v. Sparenberg, 133 Tex. 17, 124 S.W.2d 322, and will be disregarded by us.

There is another type of evidence in the record, also free from objection, which showed how testatrix had referred to these properties on various occasions.

H. E. Brodie, brother-in-law of L. W. Waxler, deceased, testified that testatrix and her husband, L. W. Waxler, referred to the property on Red River Street and on Ellingson Lane as their "city property," and the Manchaca place as their "country property.".

Mrs. H. E. Brodie testified that testatrix referred to the city property as the "Red River property."

Mr. Harry Klingemann, whose daughter is the wife of appellant Layton Waxler, being called as a witness by appellee testified that testatrix in referring to the city property "called it Red River or Ellingson Lane property," but that she also referred to the Ellingson Lane property as the "Ellingson Lane property" and the cottage on Red River as being the "Red River property."

Mrs. Ella Williams, an aunt of the parties, testified that testatrix "always did refer to it as having three different pieces of property and houses. She would always say the Red River property, the Red River house, and the Ellingson Lane property and the Manchaca property."

■ We believe that Adams v. Maris, Tex.Com.App., 213 S.W. 622, and Gilkey v. Chambers, 146 Tex. 355, 207 S.W.2d 70, are authority sustaining admissibility of this character of a testator's declarations. As said in the first case cited [213 S.W. 624] "evidence is admissible which in effect simply explains what is written. The question is, not what the testator intended to write, but what the meaning is of the words he wrote."

In the latter case the Court sustained a trial court judgment construing a will based on testimony of witnesses to the effect that testatrix used the words "personal property," found in the will, to refer to both real and personal property.

■ When the phrase "Red River Street property" as used in the second paragraph of the will was practically applied to the realty owned by decedent a latent ambiguity arose which authorized the admission of extrinsic evidence to determine the meaning with which testatrix used such words.

■ Upon the admission of such evidence it was for the trier of the facts to determine the intention of the testatrix. Russell v. Adams, Tex.Com.App., 299 S.W. 889; 44 Tex.Jur. p. 768.

The above evidence is, in our opinion, sufficient to support the findings of the trial court and we must therefore affirm its judgment. It is so ordered.

Affirmed.