ESTATE OF MARY JOYCE COX, DECEASED, JOYCE COX, INDEPENDENT EXECUTOR, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3725–70. Filed March 13, 1973.

*Robbin R. Dawson*, for the petitioner.
*Leslie A. Plattner*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency of $83,436.84 in the Federal estate tax of the Estate of Mary Joyce Cox. Several of the issues have been settled, and the only issue remaining is whether Mary Joyce Cox died holding, within the meaning of section 2041 of the Internal Revenue Code of 1954,[1] a general power of appointment over the corpus of a testamentary trust.

### FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

The petitioner, Joyce Cox, is the independent executor of the Estate of Mary Joyce Cox and maintained his residence in Houston, Tex., at the time the petition was filed in this case. The estate tax return of the Estate of Mary Joyce Cox was filed with the district director of internal revenue, Austin, Tex.

In 1900, M. G. Cox (Mr. Cox) moved from Alabama to Cameron, Tex., a small trading town. In 1903, he married Mary Joyce, and they remained husband and wife until his death in 1951. During this period, he was a successful lawyer in Cameron, but in keeping with their neighborhood and community, he and his wife lived conservatively in a modest cottage. Their only child, the petitioner, was born in 1904.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

Mr. Cox executed a will on July 29, 1936, which provided in relevant part:

— 1 —

I hereby give, devise and bequeath in trust to my son, Joyce Cox, for the use and benefit of my beloved wife, Mary Joyce Cox, a life estate in and to all property of all kinds, real, personal and mixed, of which I may die seized and possessed, and I direct my son, Joyce Cox, as trustee and as executor, shall have, and there is hereby conferred upon him, the sole and exclusive right of management of all the property of my estate * * *

— 2 —

It is my will, and I direct that, if her income from my estate and from other sources shall be insufficient to comfortably and adequately supply Mary Joyce Cox with all comforts and necessities, then the same must be provided for by sale by my trustee and executor herein named of sufficient of the corpus of my estate to so properly take care of her comfort and necessities.

— 3 —

Subject to the prior provisions of this will, and subject to the trust life estate herein created in favor of my wife, Mary Joyce Cox, I hereby give and bequeath to my son, Joyce Cox, the fee simple title in and to all property of all kinds, real, personal and mixed, of which I may die seized and possessed.

— 4 —

In the exercise of his power and control, even during the life of Mary Joyce Cox, my son, Joyce Cox, shall have the right and power to manage, sell and invest and re-invest any and all property of my estate as in his best judgment he may think right and proper.

On March 10, 1949, Mr. Cox executed a codicil to his will which modified the will only to the extent that it provided for certain specific bequests and devises not contained in the original will. At the time of the execution of the codicil, Mr. Cox's financial condition and standard of living had not changed significantly, and his income was adequate to maintain the family's accustomed standard of living.

During his life, Mr. Cox discussed his financial situation with the petitioner. From time to time, he spoke of his concern that if something happened to him, relatives of Mrs. Cox might influence her to surrender control of her property, and his fear that she might thereby improvidently dispose of the property needed to maintain her standard of living. He especially mistrusted and disliked one relative whom his wife liked very much. In February or March of 1936, the petitioner discussed Mr. Cox's financial condition with him. Mr. Cox believed that his properties produced sufficient income to support the couple in their accustomed manner of living, if he became disabled, and the evidence supported his belief.

As a result of his impoverished youth, Mr. Cox had a great fear of a depression, and he preached and practiced hard work and thrift. From time to time, in talking to his son, with whom he had a very close and warm relationship, he spoke of his hard work which had enabled him to provide the family with such comforts and necessities of life as running water, inside plumbing, gas, and electricity. He regarded the requirements of life as necessities, and comforts as additional things, short of luxuries, related to the family's standard of living. In this respect, he was using the terms "necessities" and "comforts" as they were customarily used in Cameron during the period he lived there. In the community, the term "necessities" meant the essentials of life, and the term "comforts" meant more than the minimum necessities of life, meant what was reasonable, and meant less than an extravagance or luxury. The terms "necessities" and "comforts" had different meanings for people of different standards of living. Luxuries or extravagances were things that could not be reasonably required or afforded by people having the same standard of living.

Neither the trust officer of the bank in Cameron, nor the State court judge for the district including Cameron, would have had any difficulty in applying a standard for invasion of a trust corpus which was based on "comforts and necessities," other than the normal problems incurred in applying any legal standard. The trust corpus was never invaded.

When Mr. Cox died in 1951, his estate consisted of rental property, stocks, bonds, and cash. The stocks were divided, half being registered in the name of Mrs. Cox and half in the name of the petitioner as independent executor and trustee. Under the advice of accountants, the bonds and rental property were managed and reported on Form 1065 as a joint venture between the M. G. Cox Estate (the trust) and Mrs. Cox. Separate records were kept for the trust, and all joint venture income was shown as distributed to Mrs. Cox, who paid the taxes thereon.

After Mr. Cox's death, Mrs. Cox made gifts of her own property and of other property belonging one-half to her and one-half to the trust. When gifts of such other property were made, the petitioner, as trustee, transferred the trust's interest in the particular property to the named donee, and pursuant to the petitioner's instructions, the trust's interest or capital account in the joint venture was not reduced on account of such transfer. Rather, the entire value of the property transferred was charged against Mrs. Cox's capital account in the joint venture.

The respondent in his notice of deficiency determined that Mrs. Cox had a general power of appointment over the trust corpus and increased her gross estate by the amount of such corpus.

The only issue for decision is whether Mrs. Cox died holding, within the meaning of section 2041, a general power of appointment over the corpus of the testamentary trust. Under section 2041, if a decedent dies holding "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate," the property subject to such power is includable in the value of the decedent's gross estate, except in certain circumstances. The property is not includable in the estate when "a power to consume, invade, or appropriate property for the benefit of the decedent * * * is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent" or when a power is exercisable by the decedent only in conjunction with a person having a substantial adverse interest in the property subject to the power. Sec. 2041(b)(1)(A) and (b)(1)(C)(ii). The petitioner contends that Mrs. Cox did not hold a power of invasion or appointment and that if she did hold such a power, it was not a general power of appointment because it was limited by an ascertainable standard and because it was exercisable only in conjunction with the petitioner, who had a substantial adverse interest in the property subject to the power.

The parties agree that what property interests were created under Mr. Cox's will must be determined under Texas law and that how such interests should be taxed must be determined under the Federal tax laws. See *Morgan* v. *Commissioner*, 309 U.S. 78 (1940). Under Texas law, the first and paramount fact to be determined in construing a will is the intention of the testator as expressed by the words of the will. See *Haupt* v. *Michaelis*, 231 S.W. 706 (Tex. Comm. App. 1921). If the meaning of the words is clear, extrinsic evidence is inadmissible to vary the terms of the will. *Huffman* v. *Huffman*, 161 Tex. 267, 339 S.W. 2d 885 (1960); *Haupt* v. *Michaelis, supra.* If the meaning is not clear, extrinsic evidence is admissible to show the situation of the testator and thus to explain what was written. See *Huffman* v. *Huffman, supra.* However, the oral declarations of the testator directly expressing his intent as to the disposition of his property by his will are generally inadmissible. See *Schelb* v. *Sparenberg*, 133 Tex. 17, 124 S.W. 2d 322 (1939); *Waxler* v. *Klingemann*, 272 S.W. 2d 746 (Tex. Civ. App. 1954); 4 Page Wills, sec. 32.9 (Bowe-Parker rev. 1961).

After carefully examining the terms of Mr. Cox's will, we find that Mrs. Cox did not hold a power of appointment. The basic pattern of the will was to transfer the property to the petitioner, subject to Mrs. Cox's life estate in the income, and to provide the petitioner with control of the property. Mrs. Cox was to have nothing to do with the management of the trust. Thus, the petitioner had "the sole and exclusive

right of management of all the property of my [Mr. Cox's] estate," and in the exercise of "his power and control, even during the life of * * * [Mrs. Cox]," he had "the right and power to manage, sell and invest and re-invest any and all property of my [Mr. Cox's] estate as in his best judgment he may think right and proper." Under this arrangement, it seems clear that the petitioner's power of management was intended to include the power of determining when Mrs. Cox's income was insufficient and when the corpus should be invaded. To decide that the beneficiary had an implied power of invasion would be inconsistent with such arrangement and with the provision expressly granting the trustee "sole and exclusive" management powers.

The respondent contends, nonetheless, that Mr. and Mrs. Cox were married for almost 40 years, that there was no evidence of any animosity in their relationship, and that, therefore, we should broadly construe the will to grant Mrs. Cox, the natural object of Mr. Cox's bounty, the power of invasion. In effect, the respondent is urging that extrinsic evidence should be considered because the meaning of the will is unclear. As stated by the Texas Supreme Court in the often-cited case of *Hunt* v. *White*, 24 Tex. 643, 651 (1860) :

It is competent to admit parol evidence, as it is sometimes though not very accurately expressed, to explain a will, (or other written instrument,) by showing the situation of the testator, in his relation to persons and things around him; or, as it is often expressed, by proof of the surrounding circumstances; in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. His intent must be ascertained from the meaning of the words in the instrument, and from those words alone. But as he may be supposed to have used language, with reference to the situation in which he was placed, to the state of his family, his property, and other circumstances relating to himself individually and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts of the case * * *

However, when all the extrinsic evidence is considered, it supports our interpretation of the provisions of the will.

The extrinsic evidence shows that Mr. Cox had a fear of relatives, especially one who was very close to Mrs. Cox, taking advantage of her; that he believed the income from his properties was sufficient to support Mrs. Cox in her accustomed standard of living if it was not wasted by or on such relatives; that Mr. Cox had a very close relationship with his son; and that he discussed his financial affairs with his son. This evidence shows that Mr. Cox intended to grant the petitioner broad powers of control over the trust and to refrain from granting any powers to his wife, whom he believed could be taken advantage of by relatives. Our construction of the will does not ignore the desire of Mr. Cox to provide for his wife. He believed that the income from

his property was sufficient to support Mrs. Cox if it was not wasted, and indeed, it was sufficient. If the income was not sufficient, Mr. Cox's son, with whom he had a close relationship, and with whom he discussed his financial affairs, was to distribute funds to Mrs. Cox.

We realize that a nontrustee beneficiary, such as the testator's wife, can hold a power of invasion or a power of appointment. See *Peoples Trust Co. of Bergen County v. United States*, 412 F. 2d 1156 (C.A. 3, 1969); *Ewing v. Rountree*, 346 F. 2d 471 (C.A. 6, 1965), certiorari denied 382 U.S. 918 (1965). In those cases, the beneficiary was expressly given the power. Whether a person has a power of appointment or invasion must be gleaned from the words of the will. In the case before us, neither the words of the will nor the extrinsic evidence indicates an intent to grant such a power to Mrs. Cox.

The respondent's final contention seems to be that Mrs. Cox made gifts of property, one-half of which was owned by the trust, and that the making of these gifts shows that, in substance and effect, she had unrestricted power over the trust assets. Whenever Mrs. Cox desired to make gifts involving trust property, she requested the petitioner's approval, and such approval included the charging of the full amount of the gift against Mrs. Cox's capital account in the joint venture. Thus, if a $100 gift of trust and individual property was made, Mrs. Cox's capital account would be charged $100 and the trust's account would be charged zero. Such an arrangement can hardly be said to be control over the trust assets. Furthermore, it appears that when Mrs. Cox made gifts of property jointly owned by her and the trust, she secured the consent of the petitioner, who held a remainder interest in the trust property, so that she was not exercising independently any power over the trust property.

Because we have found that Mrs. Cox did not hold a power of invasion or appointment over the trust corpus, we need not determine whether the power constituted a general power of appointment under section 2041. Due to other concessions,

*Decision will be entered under Rule 50.*