ESTATE OF DOLORES O'BRIEN, DECEASED; JOHN MORGAN O'BRIEN, INDEPENDENT EXECUTOR, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESTATE OF O'BRIEN v. COMMISSIONER
Docket No. 9966-77.
United States Tax Court
T.C. Memo 1978-457; 1978 Tax Ct. Memo LEXIS 61; 37 T.C.M. (CCH) 1847-68; November 14, 1978, Filed Stanley Schoenbaum,R. James Curphy and William Scanlan, Jr., for the petitioner. James N. Mullen, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in the Federal estate tax of the Estate of Dolores O'Brien in the amount of $70,137.64. The issue for our decision is whether decedent retained an interest, within the meaning of section 2036(a)(2), [1] in property *62 transferred to trusts created for her grandchildren thereby requiring the fair market value of her community one-half interest in such property to be included in her estate. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are the Estate of Dolores O'Brien (hereinafter decedent) and John Morgan O'Brien (hereinafter petitioner), decedent's son and the independent executor of her estate. Petitioner resided in Bee County, Texas, at the time petition was filed in this case. The Federal estate tax return for the decedent's estate was filed with the District Director of Internal Revenue, Austin, Texas. Decedent died on December 14, 1973, at the age of 70 years.During her lifetime decedent was married to John J. O'Brien.Together they had two children: petitioner, who was born on February 21, 1925, and Janie Frances O'Brien Harkins, who was born on January 2, 1928. On August 31, 1959, decedent and her husband *63 created 11 separate irrevocable trusts (hereinafter 1959 Trusts) for the benefit of their grandchildren. Five of the 1959 Trusts (hereinafter O'Brien 1959 Trusts) named petitioner as trustee and his children as beneficiaries. Six of the 1959 Trusts (hereinafter Harkins 1959 Trusts) named Janie Frances O'Brien Harkins as trustee and her children as beneficiaries. In 1959 the decedent and her husband transferred certain livestock with a gross value of $39,951.30 to the O'Brien 1959 Trusts in five equal shares. Similarly, livestock with a gross value of $39,951.31 was transferred to the Harkins 1959 Trusts in six equal shares. Additional transfers were made to the 1959 Trusts in September 1960 and September 1961 with an aggregate gross value of $64,233.60 and $61,275 in the respective years. The appropriate gift tax returns were filed and gift tax was paid for all of these transfers. The trust instruments for the O'Brien 1959 Trusts contained in pertinent part the following provisions regarding successor trustees: ARTICLE VI
1. If the original Trustee herein appointed should die, resign, become incapacitated, or be removed, then Mary Kathryn O'Brien, wife of John Morgan *64 O'Brien, shall succeed to the first vacancy so created. The second vacancy shall be filled by Janie Frances O'Brien Harkins, daughter of Trustors. While Trustors, or either of them, are still living, they, or either of them, together with John Morgan O'Brien may provide and name additional successor Trustees or may select one or more successor Trustees in lieu of and to replace those above named.However, should the Trustee, John Morgan O'Brien, die before the termination of the several trusts hereby created, the successor Trustees so named and appointed at the time of the death of the said John Morgan O'Brien shall remain fixed and shall not be replaced. Trustors, or either of them, may at any time name additional Trustees to fill any vacancy caused by the death, resignation or incapacity of the successor Trustees above named. Any replacement or appointment provided for herein shall be accomplished by an instrument in writing signed by the persons designated above as having authority to make such replacement or appointment, an executed copy thereof shall be attached to the original trust instrument and shall thereupon become a part thereof. If any vacancies occur which are not *65 covered above, such vacancy shall be filled by a District Court of Refugio County, Texas, upon the application of any party at interest. Except as otherwise expressly provided for herein, each successor Trustee shall, by virtue of accepting such successor-trusteeship, succeed to all of the rights, powers, duties, titles and immunities herein granted to, vested in, or imposed upon the original Trustee herein appointed. And as used herein, unless the context plainly requires a different meaning the term "Trustee" shall mean whomsoever of those herein named or appointed as herein specified, are then acting as Trustee hereunder.It is the intention of Trustors that there shall always be a Trustee for each trust in existence hereunder, and each trust shall always have the same Trustee. A Vacancy, however, [sic] created, in the trusteeship of any trust in existence hereunder shall ipsofacto create a corresponding vacancy in the trusteeship of all other trusts then in existence hereunder. 2. If anyone becomes a successor Trustee of any of the trusts created hereby, or to come into existence under the terms hereof, by virtue of a Court appointment, as is contingently provided *66 for in Paragraph 1 of Article VI, then the appointing Court shall require the Trustee so appointed by such Court to give bond, with sureties to be approved by the appointing Court, to secure the faithful performance of his or her duties as such Trustee. Such bond shall be in an amount equal to the amount which the Trustee would be required to give under the laws of Texas in force at that time if such Trustee were guardian of an estate consisting of classes of property and of the value then in the trusts of which such appointee becomes Trustee. Any party at interest may at any time invoke the jurisdiction of the appointing Court to inquire into the sufficiency of any bond previously given by a Trustee, and the appointing Court shall have continuous jurisdiction to require at all times of such Trustee a bond adequate in accordance with the standards specified in this paragraph. All premiums on all such bonds shall be considered an expense of the trusts which are secured thereby.No bond or security shall be required of any original Trustee or of successor Trustees appointed by name in Article VI (1) hereof. 3. Except as otherwise expressly provided herein, each trust hereby created, *67 or hereafter to come into existence under the terms hereof, shall be managed and controlled, and all questions relating to the administration of such trust determined, in accordance with the terms of The Texas Trust Act as said Act may exist as of the time a determination is to be made. * * *
5. Trustee shall be entitled to reasonable compensation for his services as such, but this compensation shall never exceed the amount customarily charged for similar services at the time the service is rendered, averaged in case of divergence, by banks which are members of the Clearing House Association of the City of the Clearing House Association of the City of Houston, Texas, and by banks which are members of the Clearing House Association of the City of San Antonio, Texas. 6. Within two (2) months after the close of each accounting year of each trust created hereby, or to come into existence hereunder, Trustee shall furnish to Trustors, or to the survivor of them, a statement showing in detail the condition and holding of each trust as of the close of said accounting year, and the result of its operations for such year. Whenever the beneficiary of any such trust is twenty-one *68 (21) years, or over, a similar statement as to the trust of which he or she is a beneficiary shall be furnished him or her at the same time. Any beneficiary of any trust created hereby who is of age, or the legal guardian of any minor beneficiary, may at any time, at his, her or their expense, cause the books and records of the trust of which he or she is a beneficiary to be audited by any reputable Certified Public Accountant selected by the moving party or parties; and the books and the records of the trust or trusts shall always be open to inspection at all reasonable times by those who could under the foregoing provision cause such an audit to be made. The Harkins 1959 Trusts contained corresponding provisions for successor trustees. In addition, both the O'Brien 1959 Trusts and the Harkins 1959 Trusts contained the following provisions addressing revocability and the possibility of additional gifts to the trust: ARTICLE V
1. Trustors, and each of them expressly acknowledge and declare that the gifts hereby made and the trusts hereby created are intended to be, and are, irrevocable, and that this decision has been reached after full and mature consideration. 2. *69 Trustors, or either of them, may at any time hereafter, and from time to time, make additional gifts to any trust created hereby (including new trusts created in accordance with the other provisions hereof), if, in the judgment of the Trustee, the acceptance and holding of such property will not burden or prejudice the receiving trust. In case any such gift is made, the donor may attach as a condition to its acceptance that the required minimum annual distribution of net income to the primary beneficiary of the receiving trust provided for in Paragraph 1 of Article II hereof be increased in an amount not exceeding ten per cent (10%) of the fair value of the gift at the time made, which annual distributions shall be deemed to come from the added donation. No other condition or limitation, and no right of reversion or revocation, shall be attached to any such gift; but, subject only to the permitted provision as to an increase in required annual distributions any such added property shall be held, managed, controlled and disposed of exactly as if such added property had been a part of the original corpus of the receiving trust. 3. Under precisely the same provisions and limitations *70 as are set forth in the foregoing Paragraph 2 with respect to additional gifts from Trustors, Trustee may accept from anyone, other than Trustors, gifts of money or of property which, in Trustee's judgment, will not burden or prejudice the receiving trust. 4.Nothing in this Article V contained shall ever be construed as limiting Trustee's right to reject a gift to a trust created hereby if, in Trustee's judgment, it will prejudice or burden the receiving trust to accept same. On October 1, 1962, the decedent and her husband established eleven additional separate irrevocable trusts (hereinafter 1962 Trusts) for the benefit of their grandchildren. Five of the 1962 Trusts (hereinafter O'Brien 1962 Trusts) named petitioner as trustee and were for the benefit of his children. Six of the 1962 Trusts (hereinafter Harkins 1962 Trusts) named Janie Frances O'Brien Harkins as trustee and were for the benefit of her children. The pertinent provisions of the 1962 Trusts were the same in substance as those of the 1959 Trusts quoted above. In 1962 the decedent and her husband made gifts of two groups of certain livestock to the 1962 Trusts. One group went to the O'Brien 1962 Trusts in *71 five equal shares of $5,917.62 to each trust and the other group went to the Harkins 1962 Trusts in six equal shares of $4,931.35 to each trust. These gifts were reported on a Federal gift tax return at a gross value of $29,588.10 for each group of livestock. The trustees of the 1959 and 1962 Trusts sold the livestock shortly after each group was transferred to the trusts and reported gain from the sales on fiduciary income tax returns. The proceeds of the sales were invested in publicly traded stocks and bonds, thereby eliminating any further connection between the trusts and the O'Brien family business. The purpose for the gifts of the livestock in 1959, 1960 and 1961 to the 1959 Trusts and in 1962 to the 1962 Trusts was to reduce Federal income and estate taxes. The gifts were part of a series of lifetime gifts in trust made by the decedent and her spouse for similar purposes subsequent to 1941 on the advice of their certified public accountant, M. Dudley Gowland, (hereinafter Mr. Gowland) and their attorney, John C. Beasley (hereinafter Mr. Beasley). The first of these was on December 31, 1942, when decedent's husband established an irrevocable trust to which he transferred *72 certain mineral properties from his separate property for the benefit of petitioner and Janie Frances O'Brien Harkins. On December 28, 1948, decedent and her husband established an additional irrevocable trust for the benefit of their children and on September 17, 1952, created three separate trusts for the benefit of their grandchildren. Prior to the execution of each of these trusts decedent and her husband were specifically advised that they could not serve as original or successor trustees if they were to obtain the desired estate tax consequences. Prior to the execution of the 1959 and 1962 Trusts this advice was repeated to decedent and her husband by Mr. Gowland, Mr. Beasley, and by Harry C. Weeks, an additional attorney brought in for tax advice. The Federal income and estate tax savings from the transfers to the 1959 and 1962 Trusts were demonstrated prior to each transfer by calculations prepared for the decedent and her husband by Mr. Gowland. The decedent and her husband accepted the advice of their attorneys. They told their son and daughter that they could not serve as original or successor trustees or the desired estate tax savings would be lost. The decedent *73 and her husband also made it clear to Mr. Beasley and Mr. Weeks that they accepted their advice and therefore they did not instruct Mr. Beasley to reserve the right in the decedent or her husband to appoint themselves as successor trustees of the 1959 and 1962 Trusts. During the preparation of the 1959 and 1962 Trusts, Mr. Beasley, pursuant to the instructions of the decedent and her husband, drafted the instruments with the intent to prohibit the decedent and her husband from appointing themselves as trustees or successor trustees of the trusts. It was the intent of the decedent and her husband in executing the trust documents that they would not have the right to appoint themselves as trustees or successor trustees. The decedent's husband owned approximately 38,000 acres of ranch land and, although estate tax savings conferences were held concerning the possible transfers of ranch land to their children and grandchildren, the decedent and her husband did not make transfers of the ranch land since they did not wish to relinquish control of the land and were aware that, unless they did, they could not obtain the desired estate tax savings. Therefore, the decedent and her husband *74 instead chose to transfer the groups of livestock to the 1959 and 1962 Trusts. Neither the decedent nor her husband, John J. O'Brien, appointed a successor trustee under any of the trusts created for the benefit of their children or grandchildren, and specifically did not appoint a successor trustee for the 1959 or 1962 Trusts. The decedent had a heart attack in 1952. Prior to 1959 the decedent was in poor health, since she also suffered from cancer. Although she was mentally alert, her health deteriorated from 1952 until her death in 1973. In 1959 and in 1962 the children of the decedent, petitioner and Janie Frances O'Brien Harkins, were in excellent health. On the date of decedent's death, petitioner and Janie Frances O'Brien Harkins were still serving as trustees of the 1959 and 1962 Trusts. OPINION The primary issue for our decision is whether, within the meaning of section 2036(a)(2), the decedent retained an interest in two groups of trusts created by her and her spouse for their grandchildren. These trusts were created in 1959 and 1962 under trust instruments with pertinent provisions identical in substance. The decedent's son and daughter were each named as *75 trustee for life for the trusts for their respective children. Successor trustees were named in the trust instruments as replacements in the event the original trustee could no longer serve. The trust instrument also provided that, while either of the settlors and the original trustee were alive, together they could name successor trustees in lieu of those originally named in the instrument. After the death of the original trustee the named successor trustees would become fixed and could not be changed by the settlors, but the settlors could name additional trustees to fill any vacancy caused by the death, resignation or incapacity of the named successor trustees. Section 2036(a)(2)[2] includes in the gross estate the value of property transferred to a trust in which the decedent retained, either alone or in conjunction with any other person, the right to designate the persons who shall receive the property or income therefrom. This provision encompasses trust property that is subject to a settlor-trustee's discretion to either distribute or accumulate trust income thereby affecting enjoyment *76 of the property.The trust instruments here contain no provision explicitly dealing with the right of the decedent to appoint herself as successor trustee. Respondent contends, however, that the right of the decedent to appoint successor trustees included the right to appoint herself as successor trustee. [3] Such a right, respondent argues, requires the value of decedent's community one-half interest in the property transferred to be included in her estate to the extent the property was subject to the discretionary powers of the trustee. [4]
*77 Petitioner, on the other hand, argues that such a right was not retained since decedent's intent, as evidenced by various provisions of the instrument, was not to reserve the right to name herself as a successor trustee. Alternatively, petitioner argues that the provisions of the trusts make the issue ambiguous and, therefore, parol evidence which would indicate that decedent did not intend to reserve the right is both admissible and dispositive of the issue. After a careful reading of the instruments and an examination of the extrinsic evidence we agree with the alternative argument raised by petitioner. [5]
*78 Although the tax consequences of a trsansaion are determined under Federal law, such consequences depend on individual interests and rights as determined under state law. See Morgan v. Commissioner,309 U.S. 78, 80-81 (1940); Estate of Cox v. Commissioner,59 T.C. 825, 828 (1973). Thus, to determine what rights the decedent retained in the 1959 and 1962 Trusts we must look to Texas law. Under Texas law the cardinal rule in construing a trust is to give full effect to the intent of the settlor as expressed in the language of the trust instrument.[6] See Guilliams v. Koonsman,154 Tex. 401, 279 S.W.2d 579, 581 (1955). If the settlor's intention is not expressed by specific language, it may be deduced from the provisions of the instrument as a whole. Penix v. First Nat. Bank of Paris,260 S.W.2d 63, 65 (Tex. Civ. App. 1953). An instrument must be construed in its entirety and all of its provisions harmonized so that they are not rendered devoid of meaning. Atwell v. United States,339 F. Supp. 425, 431 (S.D. Tex. 1972). *79 Texas law also controls the admissibility of parol evidence to establish the settlor's intent here since such evidence may be determinative of the existence of legal rights and interests under the trust instrument. See Estate of Craft v. Commissioner,68 T.C. 249, 262-63 (1977), on appeal (5th Cir., Nov. 18, 1977). Generally, Texas courts exclude extrinsic evidence if the instrument is free from doubt and the expression of the intention of the settlor is incapable of more than one construction. If the instrument is ambiguous, however, extrinsic evidence which does not contradict the document is admissible. Coffee v. William Marsh Rice University,408 S.W.2d 269, 273-74 (Tex. Civ. App. 1966); Haupt v. Michaelis,231 S.W. 706, 708-09 (Tex. Comm. App. 1921). *80 Although oral declarations by the settlor directly expressing intent generally are inadmissible, ambiguity in an instrument may be resolved by extrinsic evidence of the circumstances surrounding the formation of the trusts. See Cutrer v. Cutrer,162 Tex. 166, 345 S.W.2d 513, 519 (1961); Coffee v. William Marsh Rice University,supra at 274; Waxler v. Klingemann,272 S.W.2d 746, 748 (Tex. Civ. App. 1954). Applying these principles here, we must first attempt to discern the settlor's intent as expressed in the trust instruments. Since decedent failed to explicitly address the right of self-appointment, we must examine the various provisions of the instrument as a whole in an effort to identify indications of the settlor's intent. Petitioner contends that the following provisions of the trust instruments reveal that it was the decedent's intention not to retain the right to appoint herself as successor trustee: (1) The original trustees named, decedent's son and daughter, were 22 and 25 years younger than decedent. (2) Only successor trustees specifically named in the instrument are relieved from providing a bond or security. *81 (3) The trustee is required to provide the settlor with an annual accounting within two months after the close of each accounting year. (4) The trustee has the right to reject future gifts including those by the decedent. (5) The trusts are irrevocable. (6) The trustee is entitled to reasonable compensation for services.
We think, however, that the import of these provisions both separately and collectively is uncertain. For example, since the decedent did not retain the right to remove her children as trustees, it is unlikely that she expected to outlive them and serve as a successor trustee. It is plausible, on the other hand, as respondent contends, that she intended to preserve the right to appoint herself as successor trustee in the event the named successor trustees were no longer acceptable alternatives in the event of an untimely death of the original trustee. In addition, it is arguable that decedent's failure to exempt herself from posting bond as trustee [7] is inconsistent with an intent to retain the right to appoint herself as successor trustee. If decedent contemplated appointing herself as successor trustee it is likely that she would have explicitly exempted *82 herself from the requirement of posting bond. If the decedent in fact intended to retain the right, however, failure to exempt herself may be ascribed to an oversight or to an expectation that exercise of the right was unlikely. Similarly, the provisions requiring an annual accounting to the trustors, empowering the trustee to reject future gifts from the trustors, and entitling the trustee to reasonable compensation may or may not be incongruous with an intent to retain the right to *83 serve as successor trustee. The point may be argued either way, as the parties have done on brief. Although each of the foregoing provisions may be probative in varying degrees of either petitioner's or respondent's interpretation, we conclude that collectively the provisions of the 1959 and 1962 Trusts fail to make it clear whether decedent retained the right to appoint herself as successor trustee. In the face of such ambiguity we think a Texas court would admit extrinsic evidence regarding decedent's intent. The parol evidence offered by petitioner is persuasive. The circumstances surrounding the execution of the trust instruments are convincing evidence that the decedent did not intend to retain the right to appoint herself as successor trustee. The use of inter vivos trusts was part of a lifetime plan by decedent and her husband to save estate and income taxes. Prior to the 1959 and 1962 Trusts, decedent and her husband had created trusts in 1942, 1948, and 1952 for the benefit of their children and grandchildren. In preparation for the 1959 and 1962 Trusts the decedent and her husband sought tax advice from their accountant and attorneys. Their accountant provided them *84 with calculations of income and estate tax savings which could be obtained through the use of the 1959 and 1962 Trusts. During conferences with their advisors it was made clear that decedent and her husband could not retain the right to be trustee or successor trustee if the trust property were to be removed from their estates. Since one of the major reasons for establishing the trusts was to save estate taxes, it is a fair inference that the decedent did not intend to retain the right to appoint herself as successor trustee. This inference is further supported by the nature of the property selected for transfer to the trusts. The decedent and her spouse considered the transfer of ranch land but decided against it because they did not wish to relinquish the control necessary for estate tax savings. Livestock was chosen as an alternative since, in addition to income tax benefits which were obtained, the livestock could be sold by the trusts to terminate all contact with the settlors and the ranch to obtain estate tax savings. Recognition that transfer of property to the trusts would result in loss of control indicates that the decedent did not intend to retain the right to appoint *85 herself as successor trustee. In light of the extrinsic evidence we conclude that the ambiguity in the instruments would be resolved by a Texas court in accordance with the decedent's intent not to retain the right to appoint herself successor trustee. Such a conclusion does not conflict with an orderly and harmonic construction of the trust instruments. Since the decedent did not intend to reserve the right in question, it was unnecessary to exempt herself from the requirement of posting bond or security. Similarly, she would never be in a position where she would be required to provide herself with an annual accounting or to review the propriety of her own gifts to the trusts. The weight of this evidence overcomes the mainstay of respondent's argument. Failure in the trust instruments to explicitly preclude self-appointment as successor trustee is not fatal here since the various provisions of the instruments coupled with admissible parol evidence make it clear that petitioner did not retain the right to appoint herself as successor trustee. Compare Drust v. United States, 559 F.2d 910 (3d Cir. 1977) with Mathey v. United States, 491 F.2d 481 (3d Cir. 1974). *86 Accordingly, we conclude that under the trust instruments the decedent did not retain the right, either alone or in conjunction with any other person, to designate the persons who would benefit from the property transferred to the trusts. We hold that the value of the trusts are not includable in the decedent's estate under section 2036(a)(2). [8] To reflect other adjustments, Decision will be entered under Rule 155. Footnotes
1. Unless specified otherwise, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
2. SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) GENERAL RULE.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worht), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- * * *
(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. ↩
3. Christopher v. Davis,284 S.W. 253, 257 (Tex. Civ. App.1926). This early case recognized the general rule that a settlor may appoint himself as trustee. This rule has not been altered by the Texas Trust Act. Section 7425b-37 of the Act provides that, in the event of the death of a sole or surviving trustee, the power to appoint a trustee is determined under the trust instrument. In the absence of such a provision in the instrument, the power to appoint a successor vests in the appropriate court. Although the statute addresses only vacancies caused by the death of a trustee, presumably the same rule would be applied regardless of the reason for the vacancy. See Tex. Rev. Civ. Stat. Ann., Art. 7425b-37↩ (Vernon). 4. Respondent reduced the value of the 1959 Trusts included in the estate by the amount of trust corpus necessary to generate the $500 a year per beneficiary which was required to be paid to each beneficiary without discretion by the trustee.↩
5. Respondent and petitioner dispute whether section 2036(a)(2) is applicable if the trustor's right to become trustee is contingent upon the incapacity of the original trustee or successor trustees. Compare Estate of Kasch v. Commissioner,30 T.C. 102 (1958) with Estate of Farrel v. United States,553 F.2d 637↩ (Ct. Cl. 1977). It is unnecessary for us to address this or certain other issues argued by the parties, however, since the threshold issue is whether under the 1959 and 1962 Trusts the decedent retained the right to appoint herself as successor trustee and we think she did not.
6. Although many cases delineating the rules of construction have arisen from litigation concerning a will, the rules so expressed apply with equal force to the construction of trust documents. Coffee v. William Marsh Rice University,408 S.W.2d 269, 273↩ (Tex. Civ. App. 1966).
7. Respondent contends that bond is required under the first sentence of the sixth article of the instrument only for successor trustees appointed by a Court and would not be required of decedent. As petitioner points out, respondent's argument ignores the last sentence of paragraph two of the sixth article of the trust instruments which expressly exempts from bond only those trustees appointed by name in the instrument. Successor trustees named by decedent and the original trustee after execution of the trust instrument are not expressly exempted from posting bond and therefore would be required to post bond under the Texas Trust Act' See Tex. Rev. Civ. Stat. Ann., Art. 7425b-25L↩. (Vernon).
8. Petitioner also argues that he is entitled to be awarded reasonable attorney fees under Pub. L. 94-559, 90 Stat. 2641 (Oct. 19, 1976) amending 42 U.S.C. sec. 1988. We disagree. The resolution of this issue is controlled by Key Buick Co. v. Commissioner, 68 T.C. 178↩ (1977), on appeal (5th Cir., Aug. 15, 1977), in which we held that this Court is not authorized to make an allowance of attorney's fees to a petitioner.