ACCEPTED
06-15-00075-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/6/2015 11:42:23 PM
DEBBIE AUTREY
CLERK

No. 06-15-00075-CV

IN THE COURT OF APPEALS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/9/2015 9:11:00 AM
DEBBIE AUTREY
Clerk

FOR THE SIXTH DISTRICT OF TEXAS

at TEXARKANA

GARY DAVID BRAY, et al.,

v.

GREGORY L. FENVES

Appealed from the 53rd District Court of
Travis County, Texas

_____

# APPELLANTS' BRIEF

_____

Kirk David Lyons
Texas Bar No. 12743500
Southern Legal Resource Center, Inc.
P.O. Box 1235
Black Mountain, N.C.  28711
Tel.  (828) 669-5189
Fax  (828) 669-5191
kdl@slrc-csa.org

ATTORNEY FOR APPELLANTS

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Plaintiffs Below/Appellants:
Gary David Bray
Texas Division, Sons of Confederate Veterans, Inc.
David Steven Littlefield

Represented by:
Kirk David Lyons, Attorney in Charge
Texas Bar No. 12743500
P.O. Box 1235
Black Mountain, N.C.  28711
Tel.  (828) 669-5189
Fax  (828) 669-5191
kdl@slrc-csa.org
C.L. Ray, Co-counsel
Texas Bar No. 00000034
604 Beardsley Lane, Suite 100
Austin, TX 78746
Tel.  (512) 328-9238
Fax  (512) 857-0606
clray4523@hotmail.com

Defendant Below/Appellee:
President Greg L. Fenves, University of Texas at Austin

Represented by:
Mariel Puryear, Attorney in Charge
Texas Bar No. 24078098
Office of the Texas Attorney General
P.O. Box 12548
Austin, TX  78711
Tel.  (512) 463-2120
Fax  (512) 320-0667
mariel.puryear@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES ..................................................................2

INDEX OF AUTHORITIES ..........................................................6

STATEMENT OF THE CASE ......................................................10

ISSUES PRESENTED FOR REVIEW ........................................12

STATEMENT OF FACTS ...........................................................12

SUMMARY OF THE ARGUMENT .............................................14

ARGUMENT .............................................................................16

I.  Plaintiffs Have Standing ......................................................16

    A.    Standard of Review ......................................................16

    B.    Plaintiffs Have Individual Standing Under the
        *Abbot* Rule ..................................................................22

    C.    Plaintiffs Are Excepted to the Requirement
        for Particularized Injury, Because Individual
        Plaintiffs Are Taxpayers .............................................26

    D.    The Sons of Confederate Veterans, Inc.,
        Has Associational Standing Under *Texas
        Association of Business* ..............................................27

    E.    Plaintiffs Have Standing, Because the
        Texas Constitution Guarantees Open Access
        to Courts ......................................................................29

    F.    Conclusion on Standing ..............................................31

II.   Defendant President Fenves Violated the Terms of the
      Littlefield Bequest..............................................................31

      A.    The Littlefield Conveyance Is a Bequest as
            Understood in the Law as It Existed at the Time
            of the Conveyance .....................................................32

      B.    Defendant President Fenves Breached the Terms
            of the Littlefield Bequest ...........................................38

      C.    The University Is Barred from Moving the
            Monuments under the Doctrine of Quasi-Estoppel....45

      D.    The Proper Remedy for Breach of the Bequest .........47

      E.    Conclusion on Breach of the Bequest ........................47

III.  Defendant President Fenves Violated the Texas
      Government Code................................................................48

      A.    The Littlefield Monuments Are Protected
            by the Monument Protection Act................................48

      B.    The University of Texas Is Not Exempt from the
            Requirements of the Monument Protection Act.........53

      IV.   Defendant President Fenves Violated Board of
            Regents Rules...........................................................54

      V.    A Case of First Impression and Request for Oral
            Argument..................................................................57

PRAYERS .....................................................................................57

CERTIFICATES ...........................................................................59

APPENDIX

Order Denying Plaintiff's Application for
Temporary Injunction ................................................TAB A

Order Granting Plea to Jurisdiction...........................TAB B

Littlefield Will ...........................................................TAB C

Monument Protection Act, Texas Government
Code Sections 2166.501 and 2166.5011 ...................... TAB D

University of Texas System Board of Regents Rules
138 § 2 and 60101 § 2................................................TAB E

# INDEX OF AUTHORITIES

## CASES

*Abbott v. G.G.E., et al.,*
463 S.W.3d 633 (Tex. App.—Austin Apr. 30, 2015) 16, 19, 22, 24, 31, 54

*Angell v. Bailey,*
225 S.W.3d 834 (Tex. App.—El Paso 2007, no pet.) .................... 45

*Baylor Health Care System v. Employers Reinsurance Corp.,*
492 F.3d 318 (5th Cir. 2007) ....................................................... 46

*Bell v. State Dep't of Highways & Pub. Transp.,*
945 S.W.2d 292 (Tex. App.—Houston [1st Dist.] 1997,
writ denied) ................................................................................ 18

*Biko v. Siemens Corp.,*
246 S.W.3d 148 (Tex. App.—Dallas 2007, no pet.) ..................... 46

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000) .......... 21, 54

*Board of Water Engineers v. City of San Antonio,*
283 S.W.2d 722 (Tex. 1955) ........................................................ 20

*Continental Cas. Ins. Co. v. Functional Restoration Associates,*
19 S.W.3d 393 (Tex. 2000) .......................................................... 17

*Dahl ex rel. Dahl v. State,*
92 S.W.3d 856 (Tex. App.—Houston [14 Dist.] 2002,
no pet.) ........................................................................................ 18

*Dakan v. Dakan*,  83 S.W.2d 620 (Tex. 1935) ................................. 38, 40

*Daniel v. Goesl*, 341 S.W.2d 892 (Tex. 1960) ...................................... 46

*Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000) .......... 17, 22, 29

*Dulin v.* Moore, 70 S.W. 742 (Tex. 1902) ........................... 33, 34, 35, 36

*Edsall v. Hutchings*,
    143 S.W.2d 700 (Tex. Civ. App.—Eastland 1940,
    no writ) ..................................................................... 38, 40

*Gillman v. Gillman*,
    313 S.W.2d 931 (Tex. Civ. App.—Amarillo 1958,
    writ refused n.r.e.) ................................................. 40, 41

*Haupt v. Michealis*, 231 S.W. 706 (Tex. 1921) ............................. 32, 37

*Hodge v. Ellis*, 277 S.W.2d 900 (Tex. 1955) ............................. 38

*Hoffmann v. Davis*, 100 S.W.2d 94, 95 (Tex. 1937) ............................. 21

*Huston v. Federal Deposit Insurance Corp.*,
    663 S.W.2d 126 (Tex. App.—Eastland 1983,
    writ ref'd n.r.e.) ................................................... 17

*In re Walker Estate*,
    No. 13-11-00438 CV (Tex. App.—Corpus Christi-Edinburg
    August 23, 2012, no pet.) (mem.op.) ............................. 33

*Lane v. Sherrill*,
    614 S.W.2d 623 (Tex. App.—Austin 1981, no pet.) ..................... 33

*Lindsey v. Rose*, 175 S.W. 829 (Tex. 1915) ............................. 33

*Lopez v. Munoz, Hockema & Reed, L.L.P.*,
    22 S.W.3d 857 (Tex. 2000) ......................................... 45

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................... 19

*McMurray v. Stanley*, 6 S.W. 412 (Tex. 1887) ..................... 33, 34, 36

*National Educators Life Ins. Co. v. Master Video Systems, Inc.*,
    398 S.W.2d 358 (Tex. Civ. App.—Corpus Christi 1965,
    writ ref'd n.r.e.)......................................................................45

*Perfect Union Lodge v. Interfirst Bank of San Antonio*,
    748 S.W.2d 218 (Tex. 1988)....................................................33

*Sax v. Votteler*, 648 S.W.2d 661 (Tex. 1983.................................21

*Sierra Club v. Morton*, 405 U.S. 727 (1972)................................16

*Smith v. Butler*, 19 S.W. 1083 (Tex. 1892) ................................39

*Stephanou v. Texas Medical Liability Ins. Underwriting Assoc.*,
    792 S.W.2d 498 (Tex. App.—Houston [1st Dist.] 1997,
    writ denied) ..........................................................................18

*Terrazas v. Carroll*,
    277 S.W.2d 274 (Tex. Civ. App.—Eastland 1955,
    no writ) .................................................................................46

*Texans United for Reform & Freedom v. Saenz*,
    319 S.W.3d 914 (Tex. App.—Austin 2000,
    no pet.) .................................................................. 16, 21, 26, 31

*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
    852 S.W.2d 440 (Tex. 1993)............... 16, 17, 18, 19, 20, 21, 27, 31

*Texas Dep't of Parks and Wildlife v. Miranda*........................28, 29, 51

*Theriot v. Smith*,
    263 S.W.2d 181 (Tex. Civ. App.—Waco 1953, writ dism'd).........46

*Wright v. Wright,* 154 Tex. 138, 274 S.W.2d 670.(Tex. 1955) ...........40

## RULES

Texas Rule of Civil Procedure 80 ........................................................18

University of Texas System Rule 138 § 2 ................................ 12, 56, 58

University of Texas System Rule 60101 § 2 ........................... 12, 55, 58

## CONSTITUTION

**TEX. CONST.,** art. 1, § 13................................................. 17, 21, 29, 31

## STATUTES

Texas Government Code § 2166.003.....................................................53

Texas Government Code § 2166.501...................... 12, 14, 48, 49, 50, 58

Texas Government Code § 2166.5011.............. 12, 14, 48, 49, 50, 52, 58

Texas Property Code Annotated Preface ..............................................36

Texas Property Code § 123.001...........................................................36

## OTHER AUTHORITIES

Black's Law Dictionary (2d ed. 1910) ...........................................34, 37

Black's Law Dictionary (9th ed. 2009) .................................... 42, 47, 48

21 Corpus Juris Secundum *Courts* § 16 .............................................17

34 Texas Jurisprudence 3d *Estoppel* § 2 ............................................45

74 Texas Jurisprudence 3d *Wills* § 279 ..............................................34

97 Corpus Juris Secundum *Wills* § 1237 .......................................32, 40

## STATEMENT OF THE CASE

For ease of identification, Appellants Gary David Bray, the Texas Division, Sons of Confederate Veterans, Inc., and Steven David Littlefield are referred to as "plaintiffs" in Appellants' Brief, and Appellee, President Gregory L. Fenves of the University of Texas at Austin, is referred to as "defendant."

*Nature of the Case.* Gary David Bray, the Texas Division, Sons of Confederate Veterans, Inc., and Steven David Littlefield sued President Gregory L. Fenves of the University of Texas at Austin for a temporary restraining order, and a temporary injunction to bar defendant from removing the Jefferson Davis and Woodrow Wilson monuments from the University of Texas at Austin campus, as well as for declaratory judgment that removal of Littlefield monuments would be illegal. (CR 3-26).

*Course of Proceedings.* After a one-day preliminary hearing, the trial court denied plaintiffs' application for temporary injunction and granted defendant's plea to the jurisdiction with prejudice. (CR 265, 280). Plaintiffs filed a motion to vacate the order denying the temporary injunction as being void, because the trial court granted

defendant's plea to the jurisdiction with prejudice. Plaintiffs' also filed a motion to reform the judgment granting the plea to the jurisdiction, requesting that the trial court strike the improper language in the court's judgment in the grant of the plea to the jurisdiction. (CR 270-73, 276-79).

*Trial Court Disposition.* The trial court granted defendant's plea to the jurisdiction and denied plaintiffs' motion for temporary injunction. (CR 265, 280). The trial court did not rule on the post-hearing motions to reform judgment and to vacate the judgment, and those two motions were denied by operation of law. The petition for declaratory judgment was rendered moot by the grant of the plea to the jurisdiction.

## ISSUES PRESENTED FOR REVIEW

Issue 1:    Whether plaintiffs have standing.

Issue 2:    Whether Defendant Pres. Gregory Fenves violated the terms of the Littlefield Bequest to the University of Texas.

Issue 3:    Whether Defendant Pres. Gregory Fenves violated Texas Government Code §§ 2166.501 and 2166.5011, as well as the University of Texas System Board of Regents Rules 138 § 2 and 60101 § 2.

## STATEMENT OF FACTS

On October 14, 1919, Major George Washington Littlefield made the largest personal bequest to the University of Texas in the history of the institution up to recent times. (CR 109).

Part of the Bequest included funds for the design and creation of a series of monuments, including those of Jefferson Davis and Woodrow Wilson. (CR 211-12).

Subsequent to Maj. Littlefield's demise, the University of Texas accepted the Bequest. (CR 117-18). The University used the Littlefield funds to install the monuments and fountain commissioned by Littlefield, including the monuments to Jefferson Davis and Woodrow

Wilson. Maj. Littlefield directed their placement on the South Mall through express language in his Will. *Id.*

The monuments were fashioned, installed, and then dedicated on April 29, 1933. (CR 119).

Eighty-two years later, on August 13, 2015, President Gregory L. Fenves ordered that the Jefferson Davis and Woodrow Wilson monuments be removed. (CR 5, 125, 135).

On August 14, 2015, plaintiffs initiated proceedings to prevent the removal of the monuments from their ancient locations on the University's South Mall by applying for a temporary restraining order, a temporary injunction, and declaratory judgment. (CR 3-26).

At the preliminary hearing on August 27, 2015, the 53rd District Court of Travis County, J. Crump presiding, denied plaintiffs' application for a temporary injunction. (CR 265, 280). The denial of the temporary restraining order was thereby rendered void. *Id.*

On Sunday, August 30, 2015, the University removed the Davis and Wilson monuments and is storing them at a location undisclosed to plaintiffs.

## SUMMARY OF THE ARGUMENT

The trial court erroneously granted defendant's plea to the jurisdiction. Plaintiffs have both individual standing and associational standing in this matter. In addition, plaintiffs have a constitutional right to remedy, because they have been injured by defendant's acts in removal of two Texas monuments protected under Texas Government Code §§ 2066.510 and 2066.5011.

Defendant Pres. Gregory Fenves of the University of Texas at Austin violated the terms of the Littlefield Bequest by removing the Davis and Wilson monuments from the University's South Mall. When the University elected to accept the benefits of the Littlefield Bequest, the University also accepted the burdens, which included the placement of the monuments in their original locations. The monuments were controversial when dedicated and remain controversial to this day. The fact of controversy is immaterial to the University's election of benefits, because controversy is one of the burdens to which the University acquiesced in its election of benefits by accepting the Littlefield funds. Plaintiffs have evidence, which they seek to clarify and wish to further develop via the discovery process, as to whether the University fulfilled

all the original terms of the Littlefield Bequest. Plaintiffs contend that other terms of the Littlefield Bequest have been wasted or uncompleted subsequent to Maj. Littlefield's demise, thus further breaching the University's promise to one of its greatest benefactors.

Since UT Pres. Fenves has breached the terms of the Littlefield Bequest, the University has wasted or never completed other terms of the Bequest, and the University has abused the public trust, the Bequest funds which the University accepted, enjoyed, and from which it has benefited, should be disgorged in contemporary dollars and placed in a trust used to administer the funds in accord with Maj. Littlefield's express purpose in his Bequest, with the Sons of Confederate Veterans, Inc., as trustees for the benefit of the citizens of Texas in perpetuity. In addition, plaintiffs seek the return of the Davis and Wilson monuments to their ancient and original locations on the University's South Mall.

## ARGUMENT

## I. PLAINTIFFS HAVE STANDING.

### A. Standard of Review

As set out in more detail below, individual plaintiffs Mr. Gary Bray and Mr. David Littlefield have standing as individual plaintiffs as provided in the *Abbott* rule. Individual plaintiffs Messrs. Bray and Littlefield also have taxpayer standing as provided for under the Court's *TURF* exception to the general rule for individual standing. The Sons of Confederate Veterans, Inc., have associational standing under the *Texas Ass'n of Bus.* rule. Plaintiffs have a constitutional right to a remedy at law for their common-law injury, which confers standing under the Texas Constitution. For these reasons, the trial court, J. Crump, committed reversible error in granting defendant's plea to the jurisdiction.

Standing arises from two foundational sources under Texas law. Firstly, the doctrine of separation of powers requires that judicial power is applied to cases and controversies only. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (J. Cornyn); *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). Secondly, standing is

conferred by the Texas open-courts provision of the Texas Constitution to provide a remedy to injury. "All courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law." **TEX. CONST.,** art. 1, § 13. Indeed, the second foundation for standing may well be construed as conferring greater authority than the first under Texas law. "The right of a plaintiff to maintain suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000) (quoting 21 C.J.S. *Courts* § 16, at 23 (1990)).

Standing is a component of subject-matter jurisdiction that requires the same standard as any determination of subject-matter jurisdiction. *Texas Ass'n of Bus.,* 852 S.W.2d at 446. In reviewing trial-court orders that dismiss a cause for lack of subject-matter jurisdiction, appellate courts should "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Continental Cas. Ins. Co. v. Functional Restoration Associates*, 19 S.W.3d 393, 404 (Tex. 2000); *see also Texas Ass'n of Bus.*, 852 S.W.2d at 440 (citing *Huston v. Federal*

*Deposit Insurance Corp.*, 663 S.W.2d 126, 129 (Tex. App.—Eastland 1983, writ ref'd n.r.e.)). Thus, a trial court must accept the plaintiff's allegations in the petition as true, unless the defendant proves plaintiff made fraudulent allegations to confer jurisdiction. *Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 861 (Tex. App.—Houston [14 Dist.] 2002, no pet.).

Dismissal of causes on pleas to the jurisdiction are disfavored in Texas jurisprudence, and continuance of the cause is favored, so that when a trial court grants a plea to the jurisdiction, the cause is dismissed without prejudice.[1] *See* Tex. R. Civ. P. 80; *Texas Ass'n of Bus.*, 852 S.W.2d at 446; *Stephanou v. Texas Medical Liability Ins. Underwriting Assoc.*, 792 S.W.2d 498, 500 (Tex. App.—Houston [1st Dist.] 1997, writ denied); *Bell v. State Dep't of Highways & Pub. Transp.,* 945 S.W.2d 292, 295 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (overturned on other grounds).

Both individual and associational standing are recognized in Texas, with at least one notable exception for taxpayers. The test for individual standing has three elements:

1)    the plaintiff must have personally suffered an "injury in fact--an invasion of a legally protected interest[,]

---

[1]   In the instant matter, the trial court erred by granting UT's plea to the jurisdiction with prejudice. Plaintiffs' motion to reform the ruling was denied by operation of law.

which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;"]

2) "there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court[;"] and

3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Abbott v. G.G.E., et al.*, 463 S.W.3d 633 (Tex. App.—Austin Apr. 30, 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Texas law provides for two independent tests for associational standing. *Texas Ass'n of Bus.*, 852 S.W.2d at 446-48. One test for associational standing is provided where the organization was not established for the purpose of protecting the particular interest at issue and it is not in the members' best interest to allow the disinterested organization to sue on the members' behalf. *Id.* at 447. This is the test that defendant erroneously relied upon in his plea to the jurisdiction and on which the trial court presumably relied, also erroneously, in granting the plea to the jurisdiction. (CR 268).

The Texas Supreme Court provides for a general test for associational standing, where the purpose of the organization is the same purpose as that held by individual members. *Id.* at 446. Here, the individual plaintiffs, members of the SCV, express the same purpose in their suit against Pres. Gregory Fenves as does the Sons of Confederate Veterans, Inc. (CR 256) (RR 2:20-23). The express purpose of the SCV is "preserving the history and legacy of these heroes so that future generations can understand the motives that animated the Southern Cause." (RR 2:20-23). Individual plaintiffs Messrs. Bray and Littlefield also seek to preserve the history and legacy of Jefferson Davis and other Southern heroes on behalf of future generations. (CR 256) (RR 2:20-23). Since the purpose and interests of the SCV is the same as those of individual plaintiffs, Bray and Littlefield, the general test for associational standing should be used to determine standing in this matter.

The general test for determination of associational standing is that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus.*, 852 S.W.2d at 446 (quoting *Board of Water Engineers v.*

*City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). This is the test that plaintiffs apply in their analysis below.

An exception to the requirement to show a particularized injury for standing exists for taxpayers. *Texans United for Reform & Freedom (TURF) v. Saenz*, 319 S.W.3d 914, 919 (Tex. App.—Austin 2000, no pet.); *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555-56 (Tex. 2000) (overruled on other grounds) (where taxpayer brings action to restrain illegal expenditure of tax money, he sues for himself, and court holds taxpayer interest in subject matter is sufficient to support action) (quoting *Hoffmann v. Davis*, 100 S.W.2d 94, 95 (Tex. 1937)). "[A] narrow exception to that rule—a taxpayer has ***standing*** to seek prospective injunctive or declarative relief to restrain the illegal expenditure of public funds, even without showing a distinct injury." [emphasis original] *TURF*, 319 S.W.3d at 919.

Texas has also recognized at least three distinct constitutional guarantees for access to open courts. **TEX. CONST.,** art. 1, § 13; *Texas Ass'n of Bus.*, 852 S.W.2d at 448. One of these distinctions is that meaningful legal remedies must be provided for citizens to assert "well-established common law causes of action." *Id.*; *Sax v. Votteler*, 648

S.W.2d 661, 665-66 (Tex. 1983). A plaintiff's right to bring suit for common-law injuries should alone confer jurisdiction, because of the constitutional right to a meaningful remedy. *Dubai Petroleum*, 12 S.W.3d at 76-77.

### B. Plaintiffs Have Individual Standing Under the *Abbott* Rule.

Individual standing is determined by a three-part test.

1) "The plaintiff must have personally suffered an "injury in fact--an invasion of a legally protected interest[,] which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;"]

2) "There must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court[;"] and

3) "It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Abbott*, 463 S.W.3d at 633.

Individual plaintiffs Gary David Bray and David Stephen Littlefield have personally suffered an injury in fact, an invasion of a legally-protected interest, which is concrete and particularized, that was imminent before being actual, and is not conjectural or

hypothetical. (CR 254-55). Both Bray and Littlefield were threatened with imminent injury and then actually injured by Defendant Pres. Fenves' announcement that he was going to have the Davis and Wilson monuments moved and then when Defendant Pres. Fenves had the monuments moved. *Id.* Bray's and Littlefield's injuries arise from their identity as a descendant of Confederate veterans and Bray's and Littlefield's public affirmation of the values of the military service of their ancestors in the Civil War, in the restoration and reconciliation of the Nation following the war, and World War I, the same principles to which the monuments were dedicated.[2] (CR 119). Littlefield's injury also includes his status as a Littlefield collateral descendant. (RR 2:29-30). The removal of the statues destroys the University's and Texas' efforts to recognize and honor the military dead of the Civil War, World War I, and indeed American veterans of all wars, since the monument of George Washington, Commander-in-Chief of the American

---

[2] Defendant spuriously suggests that the monuments were dedicated to racism and white supremacy, (CR 117-18) and the record lacks any evidence to support such a claim. The only support for this theory is provided in the wan musings of the Fenves committee, composed of members with no competency in veterans' memorials, the law that protects such monuments from desecration, and, in particular, the specifics of the Littlefield Bequest or the rules promulgated by the UT System Board of Regents for the protection and administration of bequests to the University. Indeed, the engraved pedestal on the Woodrow Wilson monument dedicates the statute to Wilson as "President of the United States, President of Princeton University, Professor of Political Science, Founder of the League of Nations." Plaintiffs question which of these rubrics expresses racism or white supremacy.

Revolutionary armies, is included among the monuments on the University's South Mall. (CR 110). Bray and Littlefield have personally suffered injuries from the removal of the monuments, because, unlike most people, they have publicly affirmed their commitment to the same American ideals expressed and commemorated in the desecrated monuments.

A causal connection exists between the injury and the conduct complained of. Defendant Pres. Fenves announced the removal of the Davis and Wilson monuments, and then Defendant Pres. Fenves had the monuments removed. (CR 5). These acts are both the injuries and the conduct complained of—because removal of the monuments was a public repudiation of the values Maj. Littlefield and the University had agreed to promote as a condition of acceptance of the Littlefield Bequest, which Bray and Littlefield publicly affirmed, and which the University did promote for eighty-two years, before illegally removing the monuments. The University's removal of the monuments and the University's public announcement of intended removal are the plaintiffs' direct and actual injuries.

It is highly likely that plaintiffs' injuries will be redressed by a favorable decision. Originally, plaintiffs sought injunctive relief to prevent Defendant Pres. Fenves' removal of the Davis and Wilson monuments. (CR 3-29). Now, however, plaintiffs seek a declaratory judgment that removal of the monuments was illegal, that Defendant Pres. Fenves publicly repudiated the Littlefield Bequest, that Defendant Pres. Fenves and the University must return the monuments to their original locations, pursuant to the University's election to accept the benefits of the Littlefield Bequest, and that a trust for the citizens of Texas held by the Sons of Confederate Veterans, Inc., should be established with funds disgorged from the University of Texas and Student Government. The redress sought by plaintiffs will be available by a favorable decision.

The individual plaintiffs have standing because the individual plaintiffs have personally suffered injuries in fact that are actual, concrete, and particularized, that have been directly and actually caused by Defendant Pres. Fenves' announced plans and subsequent removal of statutorily-protected Texas monuments, and which injuries can be redressed by a favorable court decision.

## C. Plaintiffs Are Excepted to the Requirement for Particularized Injury, Because Individual Plaintiffs Are Taxpayers.

Even if the individual plaintiffs do not have standing under the general rule for individual standing because they have not suffered a particularized injury, individual plaintiffs have standing under the Court's *TURF* exception. *See* 319 S.W.3d at 919. It is well settled that Texas taxpayers have standing to bring suit for prospective injunctive or declarative relief to restrain the illegal expenditure of public funds, without showing a distinct injury. *Id.* Bray has been a Texas taxpayer his entire life; Littlefield has been a Texas taxpayer his entire life, until his recent retirement to Montana. (RR 2:29-30). Individual plaintiffs sought injunctive and declaratory relief at the trial court to restrain Defendant Pres. Fenves from expending public funds in the illegal removal of Texas monuments. (CR 3-29). Since Bray and Littlefield have met the elements for this narrow exception to the general rule for individual standing, Bray and Littlefield are accorded standing for the purposes of this appeal and this litigation.

D.  The Sons of Confederate Veterans, Inc., Has Associational Standing Under *Texas Association of Business.*

The proper test to determine associational standing requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Texas Ass'n of Bus.*, 852 S.W.2d at 446.

A real controversy exists between the parties.  It is the contention of the SCV that the Davis and Wilson monuments should be returned to their South-Mall locations as agreed to by the University as a fundamental condition of its election of the benefits of the Littlefield Bequest.  (CR 3-29).  Defendant Pres. Fenves erroneously argues that he has unique authority to remove monuments to Texas history, permitting the removal of the Davis and Wilson monuments. (CR 57-67).  Whether or not Defendant President Fenves has such authority and whether that authority includes the right to violate the express terms of the University's agreement leading to the Littlefield Bequest and removal of the Wilson and Davis monuments is a real controversy.

In the trial-court proceedings, defendant incorrectly represented that no real controversy between the parties exists.  (CR 61).  Specifically, the University alleged that plaintiffs do not dispute that

the Dolph Briscoe Center for American History is an appropriate place for the Davis and Wilson monuments. (CR 61-62). This assertion is simply not true. Defendant cites "Plaintiffs' Am. Pet at 3, ¶ 9." No such statement exists at that citation, nor anywhere in any pleading or statement. The truth is that, in accord with Maj. Littlefield's express and most significant condition to his Bequest, the monuments, and especially the Jefferson Davis monument, were to be given a place of prominence on the South Mall of the campus. (CR 212). This condition was accepted and honored by the University for eighty-two years. In light of the unauthorized and illegal removal of the monuments from the South Mall, the proper place of the monuments is a fact-issue dispute and is an actual controversy that precludes the granting of a plea to the jurisdiction and requires the fact finder to resolve the issue at trial. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004).

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Miranda*, 133 S.W.3d at 227-28. Here, the parties have a fact dispute relative to jurisdiction that defendant materially misrepresented to the trial court, that should have precluded a grant for the plea to the jurisdiction, and which this Court should correct by reversing and remanding this matter for trial on the merits.

The controversy will be actually determined by the judicial declaration sought. The relief sought, which includes a declaratory judgment relative to the monuments, (CR 33), will determine the disposition of the monuments.

The Sons of Confederate Veterans, Inc., has associational standing, because the SCV cause establishes a real controversy that will actually be determined by the judicial declaration sought.

### E. Plaintiffs Have Standing, Because the Texas Constitution Guarantees Open Access to Courts.

The Texas Constitution recognizes that citizens must have access to meaningful legal remedies for common law injuries. **TEX. CONST.,** art. 1, § 13; *Texas Ass'n of Bus.*, 852 S.W.2d at 448; *Dubai Petroleum*, 12 S.W.3d at 76-77. Plaintiffs seek enforcement of the express and common law terms of the Littlefield Bequest, which was accepted by the

University by the election of benefits, which stood undisturbed, unchallenged, and detrimentally relied upon by generations of Texans as donee beneficiaries for eighty-two years. In addition to the express terms of the Littlefield Bequest itself, the common law doctrines of Election of Benefits and Promissory Estoppel preclude the University from moving the monuments and from wasting the conveyed funds and improvements on the land transferred from Maj. Littlefield as donor and testator to the University of Texas almost a century ago. Any donee beneficiary, defined under the express terms of the Littlefield Bequest as any citizen of Texas who matures after 1860, has standing to enforce the terms of the Bequest. If Bray and Littlefield, as well as the Sons of Confederate Veterans, Inc., whose express purpose is to preserve the history and legacy of the Confederate Soldier for future generations, have no standing under the common law, or any other law, then all bequests made to a public institution in trust for the citizens of Texas will be worth less than dust, once the donor or testator perishes.

The Texas Constitution should, if it does not already do so in the interpretation of this Court, allow citizens of Texas standing to enforce

gifts or bequests given and accepted for the benefit of Texas citizens and held in trust by government entities.

### F. Conclusion on Standing

Plaintiffs Bray and Littlefield have standing as individual plaintiffs under the *Abbott* rule. 463 S.W.3d at 633.

Plaintiffs Bray and Littlefield have taxpayer standing as provided for under the *TURF* exception. 319 S.W.3d at 919.

Plaintiff the Sons of Confederate Veterans, Inc., have associational standing under *Texas Ass'n of Bus.* 852 S.W.2d at 446.

Plaintiffs have a constitutional right to a remedy at law for their common-law injury, which confers standing. **TEX. CONST.,** art. 1, § 13.

The trial court, J. Crump, committed reversible error in granting defendant's plea to the jurisdiction.

## II. DEFENDANT PRESIDENT FENVES VIOLATED THE TERMS OF THE LITTLEFIELD BEQUEST.

The University violated terms of the Littlefield Bequest, through waste, neglect, and express repudiation. Accordingly, the University should be required to disgorge the funds provided by Maj. Littlefield some ninety years ago in restitution for breach of the Bequest's terms to

avoid unfair and unjust enrichment; to plaintiffs as trustees for the Littlefield Bequest and agree to return all statues and structures where Maj. Littlefield, sculptor Pompeo Coppini, and architect Paul Cret intended the statues to be, in a place of prominence on the South Mall; and to maintain all facets of the Bequest with due care under authority of the plaintiffs as trustees of the Bequest.

## A. The Littlefield Conveyance Is a Bequest as Understood in the Law as It Existed at the Time of the Conveyance.

The character of a testamentary gift must be determined using the law as it existed when the will was executed.

> The difficult task of determining what interest the testator intended to devise is the province of the court. In resolving a controversy relating to the estate, interest, or amount passing under a particular devise or bequest, the court will consider the general scheme of the instrument in question, the provisions regulation descent and distribution, *the law as it existed when the will was executed*, the rights and property of the testator, and his or her knowledge regarding the persons who were objects of his or her bounty in addition to the rules governing the interpretation of wills generally. (emphasis added)

74 Texas Jurisprudence 3d *Wills* § 279 (2014); *see Haupt v. Michealis*, 231 S.W. 706, 709 (Tex. 1921).

With respect to the subject matter of a testamentary gift, the plain language of the instrument in question should be given a construction that most nearly comports with the intention of the testator as expressed in the instrument as a whole. "In construing a will[,] all its provisions should be looked to for the purpose of ascertaining what the real intention of the testatrix was[,] and, if this can be ascertained from the language of the instrument, . . . any particular paragraph of the will, which, considered alone, would indicate a contrary intent must yield to the intention manifested by the whole." *Lindsey v. Rose*, 175 S.W. 829, 831-32 (Tex. 1915); *Lane v. Sherrill*, 614 S.W.2d 623, 619 (Tex. App.—Austin 1981, no pet.); see *Perfect Union Lodge v. Interfirst Bank of San* Antonio, 748 S.W.2d 218, 220-24 (Tex. 1988) (citing *Dulin v.* Moore, 70 S.W. 742, 742-43 (Tex. 1902) (where plain language of will provides express intention of testatrix, court must give effect to intention unless prohibited by law)); see *also In re Walker Estate*, No. 13-11-00438 CV (Tex. App.——Corpus Christi-Edinburg August 23, 2012, no pet.) (mem.op.) (citing *McMurray v. Stanley*, 6 S.W. 412, 415 (Tex. 1887) (presumed intention of testator ought never be given controlling effect, where, by clear language of will testator by his own

language has made intention clear)).

A bequest is "a gift by will of personal property; a legacy." Black's Law Dictionary 128 (2d ed. 1910). A specific bequest is "one whereby the testator gives to the legatee all of his property of a certain class or kind; as all his pure personalty." *Id.* The second edition of Black's Law Dictionary does not recognize the term "charitable bequest" nor "charitable trust," although the dictionary recognizes over twenty other kinds of trusts.

Three elements are necessary to create a trust. *McMurray*, 69 S.W. at 415. "First, that the words of the testator ought to be construed as imperative, and hence imposing on the trustee an obligation; secondly, that the subject to which the obligation relates must be certain; thirdly, that the person intended to be the beneficiary under the trust be also certain." *Id.* In *Dulin,* the testatrix expressed in her plain language that she was imposing an obligation to receive and control property by a trustee. "I hereby appoint R. R. Dulin, of Sherman, Texas, trustee to receive and control the property bequeathed and devised to the children of A. B. Moore, and Martha Laura Steedman, by me." 70 S.W. at 742. The trustee was obliged with a

certain object, the property bequeathed to A.B. Moore and Martha Laura Steedman. *Id.* The intended beneficiaries are certain: A.B. Moore and Martha Laura Steedman. The three elements for the creation of a trust are satisfied. *Id.* at 743.

On November 22, 1920, Maj. George W. Littlefield made a testamentary gift of $250,000.00 to the University of Texas ("UT") for the commission and installation of a South Gateway to the campus in Austin. (CR 211-12).

> The plain language of the Littlefield Will provides:

> I give and direct my executors hereinafter named to pay to Will C. Hogg of Houston, Texas, H. A. Wroe, of Austin, Texas, and the person who occupies the position of President of the University of Texas as trustees the sum of two hundred thousand dollars ($200,000.00) said committee to use said sum or so much thereof as may be necessary to erect a massive bronze arch over the south entrance to the campus of the University of Texas, in Austin, Texas.[3]

(CR 211).

In this language, Maj. Littlefield creates an obligation in trustees. Trustees Will C. Hogg, H. A. Wroe, and the President of the University of Texas must erect a monumental bronze arch over the south entrance

---

[3] Maj. Littlefield continues with lengthy and detailed directions for the commission and installation of the statues now sited on the south mall as intended in the Will.

to the University.[4]  *Id.*  This satisfies the first element for the creation of a trust, the creation of an obligation on the trustee.

Maj. Littlefield created a certain subject, which the obligation relates to, namely the commissioning of the massive bronze arch and monuments to Confederate heroes.  *Id.*  This satisfies the second element for the creation of a trust, the naming of a certain subject for the obligation.

However, Maj. Littlefield did not name a certain intended beneficiary as the object of his bounty.  Because Maj. Littlefield did not name a certain intended beneficiary for a trust, the terms of the trust must fail.  *McMurray*, 69 S.W. at 415; *Dulin*, 70 S.W. at 742.  Maj. Littlefield did not create a trust.

Defendant claims, and in its closing remarks the trial court agreed, that Maj. Littlefield created a charitable trust by function of law.  (CR 62-64, 134).  Texas Property Code § 123.001(1)(2).  However, the Texas Property Code was enacted in 1983 by the 68th Legislature.  Tex. Prop. Code Ann. Preface 1 (West 2014).  Since the character of a testamentary gift must be determined using the extant law at the time

---

[4]  UT eventually created the Littlefield Fountain and the accompanying statues leading up the Main Building, which modification of design was contemplated in the Littlefield  Will and allowable, "giving prominence however to the statues of the men named above."  (CR 212).

of the will's execution, *Haupt*, 231 S.W. at 709, provisions of the Texas Property Code are immaterial. They did not exist at the time the will was executed in 1920 and cannot now be considered as a basis for interpreting Major Littlefield's testamentary gift made many decades before.

The language of the Littlefield Will most nearly comports with the creation of a testamentary bequest. Maj. Littlefield made a testamentary gift of personal property in the amount of $250,000.00 to the University of Texas for the design and construction of a grand memorial arch. (CR 211-12). The $250,000.00 was Littlefield's personal property and, therefore, a bequest.

In contrast, the Littlefield conveyance is more than likely not a gift, because a gift is "a voluntary conveyance of land, or transfer of goods, from one person to another, made gratuitously, and not upon any consideration of blood or money." Black's Law Dictionary 540 (2d. ed. 1910). The Littlefield conveyance is not from one person to another person, nor is it a transfer of land, nor of goods, nor for any consideration. Since these requirements of a gift are not met, the

Littlefield conveyance cannot be said to be a gift, let alone a charitable gift.

Maj. Littlefield uses both terms "gift" and "trust" in his Will. (CR 209-43). Given the law, extant at the time of Maj. Littlefield's execution of his Will, the conveyances are most plausibly construed as bequests and not trusts, because testator did not provide an express beneficiary to create a trust and the conveyance does not meet the test for a testamentary gift.

### B. Defendant President Fenves Breached the Terms of the Littlefield Bequest.

One may not at the same time take under a will and claim adversely under it. *Hodge v. Ellis*, 277 S.W.2d 900, 908-09 (Tex. 1955); see *Edsall v. Hutchings*, 143 S.W.2d 700, 703 (Tex. Civ. App.—Eastland 1940, no writ) (quoting *Dakan v. Dakan*, 83 S.W.2d 620, 624 (Tex. 1935)):

> [A]n election under a will is defined in the following language: "Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat

or in any way prevent the full effect and operation of every part of the will. The principle underlying the doctrine of election is not statutory, but is purely equitable, and was originally derived from the civil law, although in some states there are statutes declaratory of, or applying, the equitable principle to particular cases. The doctrine of election is generally regarded as being founded on the intention of the testator."

As early as 1859, the Supreme Court of this state, in the case of *Philleo v. Holliday et al.,* 24 Tex. 38, in discussing the doctrine of an election under a will, announced the following rule: "The principle of election is, that he who accepts a benefit under a will, must adopt the whole contents of the instrument, so far as it concerns him; conforming to its provisions, and renouncing every right inconsistent with it; as where the wife claims something under the will which will disappoint the will."

The foregoing rule has been uniformly followed by the courts of this state. *See Smith v. Butler*, 19 S.W. 1083 [(Tex. 1892).]

Once a benefited party elects to accept the terms of a testamentary gift or bequest, with both its benefits and its burdens, the benefited party is estopped from contesting the provisions of any part of the will that transferred the interest.

The record reveals conclusively that plaintiff had elected to take under the terms of the will of her deceased husband and, having done so with full knowledge of its provisions, she was then estopped to attack or contest other provisions of the will naming testator's sisters as beneficiaries. Since plaintiff has, according to her own pleadings and admissions, elected to take under the will[,] she must accept its burdens as well as

its benefits. *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620; *Edsall v. Hutchings*, Tex. Civ. App., 143 S.W.2d 700 (writ refused); *Wright v. Wright,* 154 Tex. 138, 274 S.W.2d 670.

The rule is well stated in 97 C.J.S. Wills Sec. 1237, p. 9, in the following language:

"The principle is that one shall not take any beneficial interest under a will, and at the same time reject its adverse provisions, or set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will, or that he who accepts a benefit under a will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it."

*Gillman v. Gillman*, 313 S.W.2d 931, 937 (Tex. Civ. App.—Amarillo 1958, writ refused n.r.e.).

The University of Texas accepted the Littlefield Bequest in its entirety, which includes funds for the commission and installation of the Littlefield Fountain and its accompanying monuments on the South Mall, design and construction of the Littlefield Dormitory for Women, and the initial funds for the Main Building, and the Texas Tower, etc. (CR 209-43). The University elected to accept the bequeathed funds for the construction of these campus improvements with certain burdens or conditions upon the acceptance of the funds. *Id.* The University promised not to move its main campus away from its current location for

21 years subsequent to Maj. Littlefield's demise, complying with an express term of the Will. (CR 213-14). The University promised to use the Littlefield Dormitory for the housing of freshmen women, complying with an express term of the Will. (CR 212-13). The University also promised to place the South Mall statues in a place of prominence on the South Mall, in compliance with an express term of the Will. (CR 211-12).

Once the University accepted the benefits of the Bequest, the University was estopped from denying any portion of the entire package of benefits and burdens. Indeed, the University "must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it." *Gillman*, 313 S.W.2d at 937. The University not only accepted and affirmatively acted upon all the provisions of the Littlefield Will, but the University did so eighty-two years ago, creating a nearly ancient pattern of Texans' reliance on the University to continue its duty to care for the buildings and significant works of art constructed from the Littlefield legacy.

Without legal authority and in breach of the Littlefield Will, Defendant President Fenves has repudiated an express testamentary

term, one which Maj. Littlefield plainly stated was of the greatest significance. (CR 211-12). Defendant President Fenves' knowing and willful repudiation of Maj. Littlefield's testamentary legacy to the University calls into question the integrity of the University relative to all bequests. If the president of the flagship University of the State of Texas can publicly repudiate arguably the most significant bequest in the history of the University and of Texas, all other donors to the University are put on fair warning that the University of Texas System believes it has no duty to comply with donors' express terms of bequests or gifts. Indeed, it is unconscionable for the University to take gifts from the living, promise performance of an express condition of acceptance, then subsequent to the donor's demise, proudly announce to all the world that the University will ignore the binding conditions of acceptance.

Plaintiffs have standing for suit against defendant as donee beneficiaries, i.e. "a third-party beneficiary who is intended to receive the benefit of the contract's performance as a gift from the promisee." Black's Law Dictionary 176 (9th ed. 2009). Maj. Littlefield bequeathed funds to the University for the establishment of University buildings,

the publication of a history of the United States, an endowed chair in American history, a fund to purchase scholarly materials concerning the history of the South, and a monumental south entrance to the campus. (CR 209-16). Maj. Littlefield's purpose was to create donee beneficiaries in "the children of the south [who] may be truthfully taught and [the] persons maturing since 1860 may be given the opportunity to inform themselves correctly concerning the south and especially the Southern Confederacy." (CR 211). This purpose was clearly Maj. Littlefield's intent in funding the publication of a history of the United States and could be construed to also be the purpose of his testamentary gift for the memorials.

Maj. Littlefield reiterated the class of donee beneficiaries further in his Will. "I believe that if [the Regents] pass such a resolution [to allow construction of a main building, to keep the campus in its current location] and accept this gift, their successors and the people of the state would feel themselves morally bound thereby." (CR 226). Littlefield plainly stated that the people of the State of Texas should feel morally bound to the terms of his Will, if the Regents accepted the Littlefield Bequest. Maj. Littlefield could not have been any clearer in his

intention that the people of the State of Texas, and in particular those maturing after 1860, were to be and now are donee beneficiaries of his Bequest and morally bound.

Maj. Littlefield's Bequest created a quasi-contractual obligation between the University and the citizens of Texas as donee beneficiaries. The University's acceptance of the Littlefield Bequest, the University's conduct in compliance with the terms of the Bequest for the past eighty-two years, and Texas citizens' enjoyment of the facilities and the significant expression of public art established a benefit to Texans that grants any Texan standing for suit against the University's Confederate veteran monuments that were controversial when designed and dedicated and remain controversial to this day. Further, the University is estopped from repudiating any terms of the Bequest, because the University elected to accept the benefits of the Bequest and must, therefore, also continue to accept the burdens.

## C. The University Is Barred from Moving the Monuments under the Doctrine of Quasi-Estoppel.

Regardless of whether Maj. Littlefield's conveyance to the University of Texas was a bequest or a trust, the University is barred from moving the monuments under the doctrine of quasi-estoppel.

Estoppel by contract or deed binds a party by the terms of a contract, unless the contract is set aside or annulled. *National Educators Life Ins. Co. v. Master Video Systems, Inc.*, 398 S.W.2d 358, 365 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.); 34 Texas Jurisprudence 3d *Estoppel* § 2 (2014). Estoppel by contract precludes parties to a valid instrument from denying its effect. *Angell v. Bailey*, 225 S.W.3d 834, 841-42 (Tex. App.—El Paso 2007, no pet.). "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.,* 22 S.W.3d 857, 864 (Tex. 2000).

A party may not accept the beneficial part of a transaction and repudiate the disadvantageous part. "It is a well settled general rule

that one who accepts the benefits of a contract must also assume its burdens." *Terrazas v. Carroll*, 277 S.W.2d 274, 277 (Tex. Civ. App.—Eastland 1955, no writ). A party who retains benefits in a transaction cannot deny its obligation and is estopped from taking an inconsistent position. *Theriot v. Smith*, 263 S.W.2d 181, 183 (Tex. Civ. App.—Waco 1953, writ dism'd); *Baylor Health Care System v. Employers Reinsurance Corp.,* 492 F.3d 318, 325 (5th Cir. 2007). Agreements bear an implied condition that one who accepts benefits under an instrument shall adopt the whole instrument, comply with all provisions, and renounce any inconsistent rights. *Daniel v. Goesl*, 341 S.W.2d 892, 895 (Tex. 1960); *see Biko v. Siemens Corp.,* 246 S.W.3d 148, 161-62 (Tex. App.—Dallas 2007, no pet.) (where plaintiffs signed letters and accepted considerable financial award, plaintiffs affirmed agreement and agreed to be bound).

The University accepted the benefits conferred by the Littlefield Bequest, and, in accepting the benefits, the University bound itself to each and every provision of the Bequest applicable to the University, including those provisions the University has found to be burdensome. Since the University accepted all the provisions of the Bequest and has

arguably continued to comply with the terms for eighty-two years, the University is now estopped from denying effect to any provision, and more particularly from removing the Davis and Wilson monuments from their prior sites.

### D.  The Proper Remedy for Breach of the Bequest Is Disgorgement of the Bequest Corpus.

Where a party has been unjustly enriched, the proper remedy is restitution.  Black's Law Dictionary 1428 (9th ed.).  Maj. Littlefield entered into a relationship with the University that he would pay for the construction of buildings and monuments, so long as the University would give prominence of place on the South Mall to the five named statues, particularly to the one of Jefferson Davis.  If Maj. Littlefield conferred a benefit upon the University pursuant to an agreement, even if the agreement is no longer in effect, the agreement is binding and enforceable by citizens of the State of Texas to recover the specific benefit or its value in restitution.

### E.  Conclusion on Breach of the Bequest

The University violated terms of the Littlefield Bequest, through waste, neglect, and express repudiation.  The University should,

therefore, disgorge the funds provided by Maj. Littlefield some ninety-six years ago in restitution for unjust enrichment to plaintiffs as trustees for the Littlefield Bequest, and the University should produce the History of the United States paid for by Maj. Littlefield, place a scholar in the endowed chair that Maj. Littlefield provided for, and agree to replace and leave all statues and structures where Maj. Littlefield, sculptor Pompeo Coppini, architect Paul Cret, and UT President Vinson intended the statues to be, in a place of prominence on the South Mall, and to maintain all facets of the Bequest with due care under authority of the plaintiffs as trustees of the Bequest.

## III. DEFENDANT PRESIDENT FENVES VIOLATED THE TEXAS GOVERNMENT CODE.

### A. The Littlefield Monuments Are Protected by the Monument Protection Act.

The canons of statutory construction allow for *in pari materia* review of statutes with inconsistent provisions. Black's Law Dictionary 862 (9th edition 2009). The Monument Protection Act provides for two adjacent sections that define what a monument or memorial is. Texas Government Code §§ 2166.501 and 2166.5011. Here, two sections define which monuments or memorials are subject

to statutory protection, and the two sections should be reviewed *in pari materia* to construe complete legislative intent on this issue.

Section 2166.501(a) provides that monuments or memorials to "Texas heroes of the Confederate States of America or the Texas War for Independence or to commemorate another event or person of historical significance to Texans and this state" on state-owned land, private land, federal land, or on property in another state are included.

Section 2166.5011(a)(1)(2) provides that a monument or memorial includes "a permanent monument, memorial, or other designation, including a statue, portrait, plaque, seal, symbol, building name, or street name, that (1) is located on state property; and (2) honors a citizen of this state for military or war-related service."

A monument or memorial, as defined under these sections, may be removed or altered only "(1) by the legislature; (2) by the Texas Historical Commission; (3) by the State Preservation Board;" or (4) for construction, repairs, or improvements to the monument or memorial. *Id.* at Sec. 2166.5011(b)(1-4)(c).

The monuments of Jefferson Davis and Woodrow Wilson, previously on the University's South Mall, are monuments to a Texas hero, the President of the Confederate States of America, Jefferson Davis, (CR 212), when Texas was a member state of the Confederate States. The second monument is to a man of historical significance to Texans and Texas, U.S. President Woodrow Wilson. (CR 176). Mr. Wilson's monument honors him for his role as President of the United States during wartime, World War I, President of Princeton University, and the Founder of the League of Nations, the first international peace organization. *Id.* Both monuments were on state-owned land, the campus of the University of Texas at Austin. *Id.* The Davis and Wilson monuments are protected "monuments or memorials" as contemplated under Texas Gov't Code §§ 2166.501(a) and 5011(a)(1)(2).

The statue of Jefferson Davis was a permanent monument, having been in place for eighty-two years and intended to remain in place in perpetuity. (CR 212). The Davis monument was located on the campus of the University of Texas at Austin, which is state property. (CR 176). The Davis monument honored Jefferson Davis as

President of the Confederacy, *Id.,* which role included his position as Commander-in-Chief of the Confederate armies during wartime, including those Confederate armies in Texas. (CR 9). The Davis monument also honored Jefferson Davis as United States Secretary of War in the 1850s, during Indian wars in West Texas, and as a United States Senator. *Id.* Mr. Davis was made a citizen of Texas in 1875 by purchase of 1080 acres of land in Bowie County, Texas, on which Mr. Davis paid property taxes. (RR 2:70-72). Since Jefferson Davis paid taxes on land in Texas, he was a citizen of Texas, as construed under the law of the time. (RR 2:73-74). Defendant alleges that Jefferson Davis was not a Texas citizen, (RR 2:75-78), establishing a contest of legislative intent and material fact in this matter. Jefferson Davis's citizenship is a fact-issue dispute and is an actual controversy that precludes the granting of a plea to the jurisdiction and requires the fact finder to resolve the issue at trial. *Miranda*, 133 S.W.3d at 226-27. But even if Jefferson Davis were not a Texas citizen, the Davis monument was dedicated to a person of historical significance to Texans and Texas, because Mr. Davis was the president of the Confederate nation that Texas joined. The Davis monument is a

protected monument, as contemplated under Texas Government Code § 2166.5011(a)(1)(2).

The Davis and Wilson monuments were removed after prompting from the University of Texas Student Government, (CR 114), and directly ordered to be removed by Defendant Pres. Greg Fenves. (CR 5). Neither Defendant Pres. Fenves nor UT's Student Government are the Texas legislature, the Texas Historical Commission, or the State Preservation Board, and it is undisputed that the monuments were not removed for construction, repairs, or improvements. Nor does the record reflect that Defendant Pres. Fenves, or anyone else from UT, sought advice on the Littlefield Monuments from any of the Texas entities with statutory competency in Texas monuments or memorials. Instead, Defendant Pres. Fenves appointed a South-Mall committee chaired by UT's Vice-President for Diversity and Community Engagement Gregory Vincent. (CR 115-16). Shortly thereafter, Defendant Pres. Fenves ordered the removal of the Texas monuments of Davis and Wilson in direct violation of the statutory authorization required under the Texas Government Code.

## B.  The University of Texas Is Not Exempt from the Requirements of the Monument Protection Act.

The University of Texas at Austin is not exempt from the requirements of the Texas Government Code, because the monuments were not "a project constructed by and for a state institution of higher education."  Sec. 2166.003(2).  To the contrary, the monuments in question were not constructed by the University but were created and sited pursuant to an agreement with and funded by Maj. Littlefield and accepted by UT.  Upon completion, the monuments were given to the University for installation as part of its larger project, the entire South Mall.  The statutory phrase implies a complete intent from beginning to end of a "project" by a state institution of higher education.  Here, Maj. Littlefield ordered and paid for the monuments, not the University.  Prepositions have consequences, and in this instance "by" bears great weight.  This exemption does not apply to the statues removed illegally by Defendant Pres. Fenves.

Defendant President Fenves and Vice-President Vincent disregarded the statutory requirements for the removal of Texas monuments to historical figures important to Texans and Texas, as well as monuments to military heroes.  In so doing, these persons

acted ultra vires and have caused the University of Texas at Austin and themselves to be liable for desecrating veterans' monuments of inestimable value to Texans.

## IV. DEFENDANT PRESIDENT FENVES VIOLATED BOARD OF REGENTS RULES.

Section IV is not in the trial-court record. Plaintiffs provide this argument with respect to the requirement under the *Abbott* Rule for determination of individual standing. Plaintiffs must show it is likely that plaintiffs will be redressed by a favorable decision. 464 S.W.3d at 633. In such an instance, the Court "may consider evidence and must do so when necessary to resolve the jurisdictional issue raised." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. Plaintiffs had planned to introduce evidence at trial that Defendant Pres. Fenves violated the internal rules of the University of Texas System for the administration of bequests, as required by the Board of Regents. Plaintiffs contend that their injury, the removal of the Davis and Wilson monuments, would likely be redressed by a declaratory judgment that Defendant Pres. Fenves violated Board of Regents Rules, by enforcement of University of Texas System Rules, by

replacement of the monuments, and by disgorgement of the current value of the Littlefield Bequest.

Even if the University were exempted from the Texas Government Code, Defendant Pres. Fenves, Vice-President Vincent, and the so-called South Mall Committee, acted ultra vires by ignoring rules promulgated by the University of Texas Board of Regents for the administration of gifts and bequests.

The University of Texas Board of Regents has vested authority and responsibility for the promulgation of rules regarding the administration of gifts, including bequests, in the Vice-Chancellor for External Relations over all campuses of the University of Texas System. UTS. R. 60101 § 2.

The Vice-Chancellor for External Relations has designated the Office of Development and Gift Planning Services (ODGPS) with the administration of bequests:

> As authorized by the Board of Regents' *Rules and Regulations*, Rule 60101[,] these procedures are designed to outline administrative processes associated with the acceptance, administration, and investment of gifts processed or administered by the Office of Development and Gift Planning Services (ODGPS), as the designee of the Vice Chancellor for External Relations in a prudent and efficient manner, with fundamental fiduciary responsibilities kept

firmly in mind. These procedures also cover gifts given for current purposes, including gifts of securities, gifts of family limited partnerships, bequests, trust distributions, personal property, life insurance and retirement plan assets. UTS. R. 138 § 2.

Board of Regents' rules give authority and responsibility for the administration of bequests to University-of-Texas campuses to the Vice-Chancellor for External Relations, who in turn has designated the Office of Development and Gift Planning Services with the crafting and promulgation of administrative rules in this area. Neither UT Defendant Pres. Fenves, nor UT Vice-President Vincent, nor anyone else sought the advice of the Vice-Chancellor for External Affairs nor the ODGPS.

The University's wrongful and blatant disregard of administrative safeguards established by the Board of Regents for the protection of gifts and bequests to University-of-Texas campuses renders Defendant UT Pres. Fenves' acts in ordering the removal of the Davis and Wilson monuments ultra vires and in violation of Texas statutes and Board of Regents rules.

## V. A CASE OF FIRST IMPRESSION AND REQUEST FOR ORAL ARGUMENT.

This is a case of first impression relative to the facts and law involved. Moreover, the citizens of Texas, as donee beneficiaries, have a particular interest in the fair, competent, and prompt resolution of the questions raised in this appeal. Accordingly, plaintiffs request oral argument so that these issues of first impression can be better explained and understood by the Court of Appeals.

## PRAYERS

1. Plaintiffs request that this Court find that plaintiffs have both individual and associational standing;

2. Plaintiffs ask the Court to reverse the trial court's grant of the plea to the jurisdiction and to remand the case for accelerated trial on the merits;

3. Plaintiffs ask the Court to reverse the trial court's denial of the motion to reform judgment;

4. Plaintiffs ask the Court to rule that defendant violated the terms of the Littlefield Bequest;

5.     Plaintiffs ask the Court to rule that defendant violated Texas Government Code §§ 2166.501 and 2166.5011;

6.     Plaintiffs ask the Court to rule that defendant violated University of Texas System Rules 138 § 2 and 60101 § 2; and,

7.     Plaintiffs ask that the Court award their costs of court and such and further relief to which plaintiffs are justly entitled to.

RESPECTFULLY SUBMITTED,

/s/Kirk David Lyons
Texas Bar No. 12743500
Southern Legal Resource
Center, Inc.
P.O. Box 1235
Black Mountain, N.C.  28711
Tel.  (828) 669-5189
Fax  (828) 669-5191
kdl@slrc-csa.org

C.L. Ray, Co-counsel
Texas Bar No. 00000034
604 Beardsley Lane, Suite 100
Austin, TX 78746
Tel.  (512) 328-9238
Fax  (512) 857-0606
clray4523@hotmail.com

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2011 and contains 9,632 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(3).

/s/KIRK DAVID LYONS
ATTORNEY FOR APPELLANTS
Dated: November 6, 2015


## CERTIFICATE OF SERVICE

I certify that a copy of Plaintiffs' Brief was served on Pres. Greg L. Fenves, President of the University of Texas at Austin, through counsel of record, Susan Watson, Office of the Texas Attorney General, P.O. Box 12548, Austin, Texas 78711, by email and the Court's electronic filing system on November 6, 2015.

/s/KIRK DAVID LYONS
ATTORNEY FOR APPELLANTS